**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

EILEEN A. McNAMARA, as Administrator of the :
of the ESTATE OF JOHNATHAN GLEAVES, JR. :
                                       :

           v.                     :        NO. 20-CV-4570
                                         :

CITY OF PHILADELPHIA; CORIZON HEALTH, :
GERALD SLORY, ELIZABETH BRADLEY,    :
LALITHA TRIVIKRAM, MATU GAYE, and     :
JOHN DOE(S)                              :

---

**MEMORANDUM OF LAW OF DEFENDANTS CORIZON HEALTH, INC.,
ELIZABETH BRADLEY, MD, LALITHA TRIVIKRAM, MD, AND MATU GAYE, RN,
IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF
MORTALITY REVIEW**

     **COME NOW**, defendants Corizon Health, Inc., Elizabeth Bradley, MD, Lalitha Trivikram, MD, and Matu Gaye, RN, by and through their counsel, O'Connor Kimball, LLP, and as and for their memorandum of law in opposition to the Plaintiff's Motion seeking to compel the production of a confidential morality review in the above-captioned matter state as follows:

     Corizon Health, Inc, is the contract provider of medical and health services to the Philadelphia Department of Prisons ("PDP"). The individual defendants identified above are professionals employed by Corizon and assigned to the PDP.

     The Plaintiff is the personal representative of the Estate of Jonathan Gleaves, the decedent, who passed away while incarcerated in the Curran Fromhold Correctional Facility ("CFCF"), one of the prisons operated in Philadelphia by the PDP. The suit includes claims asserted under 42 U.S.C. § 1983 and supplemental state law medical malpractice claims.

**THE ISSUE BEFORE THE COURT**:

     The dispute currently before the court centers around a single document. It is a report prepared by Corizon which memorializes a "mortality review" conducted by the medical staff

following the death of the plaintiff's decedent.  In the aftermath of every prisoner death, Corizon conducts a mortality review and submits the findings of that review to its Patient Safety Organization ("PSO").  The Plaintiff seeks the production of this report;  the defendants object on the basis that the report is protected by law.

**THE PATIENT SAFETY AND QUALITY IMPROVEMENT ACT OF 2005**:

The Patient Safety and Quality Improvement Act of 2005 ("PSQIA"), codified at 42 U.S.C. §299b-21 et seq., establishes a voluntary reporting system designed to enhance the data available to assess and resolve patient safety and health care quality issues.  The Patient Safety Act and its accompanying regulations provide for the collection, management and analysis of aggregated patient safety work product ("PSWP") data for reporting to or by a "Patient Safety Organization," in an effort to improve overall patient safety.  In essence, the Act provides for medical peer review whereby healthcare providers may voluntarily report information to patient safety organizations for aggregation and analysis. See: Final Rule, Dep't of Health & Human Services, Patient Safety and Quality Improvement, 73 Fed. Reg. 70,732 (Nov. 21, 2008) (effective Jan. 19, 2009).  The PSQIA is intended to "encourage a culture of safety and quality" in health care by providing ***confidentiality*** and ***legal protection*** for information that is "collected and reported voluntarily for the purposes of improving the quality of medical care and patient safety."  Venosh v. Henzes, 2013 Pa. D. & C. Dec. LEXIS 390 (Lackawanna Co.) (citing Department of Financial and Professional Regulation v. Walgreen Company, 2012 Ill. App. 2d 110452, 361 Ill. Dec. 186, 191, 970 N.E.2d 552, 557 (2012)).  (Emphasis added.)

Section 299b-21(7) of the Act defines patient safety work product as meaning any data, reports or records: (i) which (I) are assembled or developed by a provider for reporting to a patient safety organization and are reported to a patient safety organization; or (II) are developed by a patient safety organization for the conduct of patient safety activities; and which could result in improved patient safety, health care quality, or health care outcomes; or (ii) which identify or constitute the deliberations or analysis of, or identify the fact of reporting pursuant to, a patient safety evaluation system.

The definition of PSWP is quite broad, and includes any data, reports or records: (i) which (I) are assembled or developed by a provider for reporting to a patient safety organization and are reported to a patient safety organization; or (II) are developed by a patient safety organization for the conduct of patient safety activities; and which could result in improved patient safety, health care quality, or health care outcomes; or (ii) which identify or constitute the deliberations or analysis of, or identify the fact of reporting pursuant to, a patient safety evaluation system.  42 U.S.C.S. §299b-21(7)(A).

Following any "sentinel event" involving the death of an inmate under Corizon's care in the Philadelphia Department of Prisons, a "mortality review" meeting is held to review the circumstances of the event and assess the care provided for the purposes articulated within the PSQIA.  Protecting the related documents from discovery encourages such reporting and analysis.  https://www.hhs.gov/hipaa/for-professionals/patient-safety/statute-and-rule/index.html

The plaintiff in the instant case seeks the discovery of a single report which comprises the conclusions of that sole meeting in this matter. In that the document for which privilege has been asserted by Corizon pursuant to the PSQIA was created by Corizon out of that meeting for the purpose of reporting to a patient safety organization, was placed into Corizon's Patient Safety Evaluation System ("PSES") database, and was submitted to Corizon's PSO, Corizon has established all the necessary elements for assertion of a privilege under the PSQIA, and the document requested by the plaintiff is therefore not discoverable.   Crawford v. Corizon Health, Inc., 2018 U.S. Dist. LEXIS 113828).


**THE CONTRACT REQUIREMENT**:

Corizon has been the contracted-for provider of health services to the inmate population of the PDP for many years, its contract with the City of Philadelphia having been renewed several times.  The death of the inmate in the instant case occurred in September, 2018, thus the governing contract between the City and Corizon was the Provider Agreement executed by the parties on September 14, 2017.

The contract specifies the defined services and scope of work required of Corizon in the conduct of its medical services to the City.  Forming an essential part of that contract is Exhibit PA-1, which delineates, in specific, the following duties:

> *Services include, but are not limited to, the following:*
> *• Medical screening at PAB*
> *• Primary, emergency and referral care at JJSC*
>
> *Most of the following are to be provided on the State Road campus: a list of services by facility is attached as Appendix E.:*
> *• Medical Intake –within 4 hours of presentation of inmates to medical by Security*
> *• Infectious disease – full time, Board Certified*
> *• Infectious Disease Control Program*
> *• Emergency care for inmates, staff and visitors, on site*
> *• Dental care - including primary and oral surgery*
> *• Radiology – digital*
> *• Sick Call*
> *• Segregation rounds*
> *• Infirmary care*
> *• Primary care*
> *• Specialist care - using the Third Party Administrator ("TPA") network or on-site*
> *specialists*
> *• Referred ambulatory, hospital diagnostic and inpatient hospital care*
> *• Chronic care*
> *• Dialysis*
> *• Phlebotomy*
> *• Specialty Clinics (at least orthopedics, podiatry, oral surgery, optometry, wound*
> *care, dialysis and physical therapy must be provided at State Road)*
> *• Podiatry*
> *• Physical Therapy*
> *• Optometry including non-prescription glasses*
> *• OB-GYN care*
> *• Pharmacy (for physical and behavioral health care) Medication administration [Keep on Person and Direct Observation] except in the PDP psychiatric hospital ("PHSW") and transition units where the behavioral health care provider administers most medications.*
> *• Medical records – including optimization of the EMR*
> *• Courier services*
> *• Quality Improvement services*
> *• Utilization management ("UM") including UM of all inmates hospitalized in acute care hospitals and rehabilitation hospitals*

- *Equipment and supplies*
- *Dietary consultations*
- *Hospice/Palliative Care*
- *Infectious waste disposal*
- *Assertive quality improvement*
- ***Mortality Review***
- ***Peer Review***

## PEER REVIEW AND MORTALITY REVIEW ARE IMPORTANT SAFETY SYSTEMS AS ADVOCATED BY THE NCCHC:

The principal governing body offering accreditation to prison healthcare providers is the National Commission on Correctional Healthcare ("NCCHC"). It is the organization which has granted accreditation to Corizon Health for many years ongoing. Among its standards is the following:

> ***B-02 Patient Safety (important)***
>
> *The responsible health authority promotes patient safety by instituting systems to prevent adverse and near-miss clinical events. — 2008 Standards for Health Services for jails and prisons*

accreditation by the NCCHC in an uninterrupted fashion, for more than a dozen years.

Among the "systems" referenced in the foregoing section is the subscription, by a provider such as Corizon, to a Patient Safety Organization and the utilization of that organization to report in the manner as described in the initial section of this memorandum. The conduct of the provider in gathering information following sentinel events and reporting that information to the organization is a key component of the consideration given by the NCCHC upon the provider's application for renewal of its accreditation. Corizon, in that application process, includes details of its mortality review submissions to it PSO; Corizon has maintained its accreditation, in an uninterrupted fashion, ever since its inception.

**THE PRECEDENT SET BY THE 3RD CIRCUIT COURT OF APPEALS**:

The exact same issue was recently considered by the Honorable Mitchell Goldberg of this very court in the matter of <u>Rena Abran for Estate of Gene Wilson v. Marilou Orgasan</u>, et al. USDC, No. 18-1107-MSG.  In that case, the plaintiff's decedent committed suicide while incarcerated, following which Corizon held a "Mortality Review" in the exact same manner as occurring in the instant case.  In response to the plaintiff's request to obtain the report of the mortality review, and the defendant's objection based on privilege, the plaintiff filed a discovery motion with the Court.  Judge Goldberg denied the request, finding the procedure and practice undertaken by Corizon satisfied all of the criteria of the PSQIA and determined that the privilege was applicable.  At the conclusion of discovery, in response to the defendant's Motion for Summary Judgment in that case, the plaintiff again raised the issue of the confidential mortality review, claiming that the defendant's summary judgment motion should be denied due to its failure to produce the report in discovery.  In his opinion granting the motion, Judge Goldberg wrote:

> *In opposition to the Medical Defendants' and City Defendants' motions, Plaintiff argues that summary judgment is improper based on outstanding discovery. Plaintiff first requests records from the sentinel meeting held at the HOC [House of Corrections] following Wilson's death. However, I previously concluded that Plaintiff was not entitled to these records based on the Patient Safety and Quality Improvement Act privilege, 42 U.S.C. § 299b-22. (See November 8, 2019 Order, ECF No. 97.)*

The plaintiff in the <u>Abran</u> matter appealed the summary judgment granted by the trial court and among the various issues entertained by the 3rd Circuit was the issue once again raised by the plaintiff/appellant, that the trial court's preclusion of the mortality review was an abuse of discretion.  In its opinion, which affirmed the judgment entered by Judge Goldberg, the 3rd Circuit, in an opinion written by the Honorable Marjorie Rendell, stated, "….reviewing the District Court's management of discovery, we detect no abuse of discretion. *See Country Floors, Inc. v. Partnership Composed of Gepner & Ford*, 930 F.2d 1056, 1062 (3d Cir. 1991)."

Respectfully, it is suggested that the issue before this Honorable Court is well-settled. The Mortality Review is a document protected from disclosure by the clear wording of the

statute as well as the review of the Court of Appeals.   Accordingly, it is humbly requested that the Court deny the request of the plaintiff.

Respectfully submitted,

**O'CONNOR KIMBALL LLP**

By:  _____
Thomas J. Gregory, Esquire
Attorney I.D. No. 38104
Two Penn Center Plaza, Suite 1100
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
(215) 564-0400        Facsimile: (215) 564-1973
Email: tgregory@okllp.com
Our File No. 210-1713
*Attorney for Defendants, Corizon Health, Inc.
Elizabeth Bradley, M.D., Lalitha Trivikram, M.D.,
and Matu Gaye, RN*

Dated:  4/27/22