IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EILEEN MCNAMARA, as : | |
| Administrator of the ESTATE OF : | |
| JONATHAN GLEAVES, JR. : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 20-4570 |
| CITY OF PHILADELPHIA, ET AL. : | |

## MEMORANDUM

**SURRICK, J.**                                                                              **JUNE 30, 2022**

Plaintiff seeks documents related to a mortality review conducted by Defendant Corizon Health following the death of Plaintiff's son-in-law who was in the custody of the Philadelphia Department of Prisons. Defendants assert that the requested documents are protected from discovery by the statutory privilege for patient safety work product in the Patient Safety Quality Improvement Act, 42 U.S.C. § 299b-22(a)(2). Defendants have not demonstrated a basis for the privilege beyond a bare recitation of the statutory elements. Accordingly, Plaintiff's request for all documents prepared in connection with the mortality review will be granted.

I.      BACKGROUND

Jonathan Gleaves, Jr. died while in the custody of the Philadelphia Department of Prisons less than 24 hours after he was admitted to the Curran-Fromhold Correctional Facility. (Pl's. Compl. ¶ 1, 16, ECF No. 1.) He was 33 years old. (*Id.* ¶ 3.) Upon admission, Mr. Gleaves informed officials at the facility that he frequently used heroin, fentanyl, and Xanax. (*Id.* ¶ 17.) This information should have caused Defendants to closely monitor Mr. Gleaves' medical condition. (*Id.* ¶¶ 19-23.) Plaintiff alleges that Defendants failed to take the necessary steps to ensure proper monitoring. (*Id.* ¶¶ 19-23.) Sometime early the next morning, Mr. Gleaves

suffered a medical emergency related to his substance abuse issues. (*Id.* ¶ 34.) His cellmate attempted to obtain emergency medical help for Mr. Gleaves, but either the alarm system was not working, or Defendants ignored the alarm. (*Id.* ¶¶ 33-42.) Mr. Gleaves did not receive medical attention until a new shift of correctional officers observed him in his cell in distress. (*Id.* ¶¶ 43-51.) Mr. Gleaves died at a hospital hours later. (*Id.* ¶¶ 44-47, 53-56.) Plaintiff, who is Mr. Gleaves' mother-in-law and the administrator of his estate, brings this lawsuit, alleging violations of the Eighth and Fourteenth Amendments, and state law negligence claims. (*Id.* ¶¶ 74-80.) For purposes of this discovery dispute, the only relevant Defendants are Corizon and the individual Corizon employees. (Pl's. Br. at n. 1, ECF No. 28.)

The death of anyone detained in the Philadelphia Department of Prisons is a "sentinel event" that requires a mortality review process. (Defs.' Opp. Br. at 2-5, ECF No. 27.) The mortality review assesses the circumstances and cause of the individual's death. (*Id.* at 3.) It also assesses the care that Corizon provided. (*Id.*) Corizon, as a part of its contract with the City of Philadelphia to provide medical services to detained individuals, conducts the mortality review, which culminates in a meeting and a report that memorializes Corizon's findings. (*Id.*)

The dispute now before the Court concerns documents prepared in connection with the mortality review for Mr. Gleaves. The parties appear to disagree on the number of documents, but Plaintiff points to deposition testimony stating that multiple documents are prepared in connection with a mortality review. (Pl's. Br. at 3.) Defendants concede the existence of a report that contains the conclusions of the review. (Defs.' Opp. Br. at 3.) Plaintiff highlights the relevancy of these documents, and Defendants do not dispute the relevancy. Instead, Defendants assert that the requested documents are protected from discovery by the statutory privilege for

2

patient safety work product in the Patient Safety Quality Improvement Act, 42 U.S.C. § 299b-22(a)(2).

This dispute first came before the Court via letters emailed to Chambers.  After reviewing the parties' submissions and the relevant law, the Court directed the parties to provide further briefing.  (ECF No. 25.)  The Court directed the parties to address the statutory definition of patient safety work product, specifically the requirement that the documents were assembled *for the purpose of reporting to a patient safety organization*.  (*Id*.)  The Court also instructed the parties to address any external requirements for the mortality review, such as national accreditation standards or policies that require the creation of the documents at issue.  (*Id*.)

## II.   LEGAL STANDARD

"It is well-established that the scope and conduct of discovery are within the sound discretion of the trial court."  *Marroquin-Manriques v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983). Pursuant to Federal Rule of Civil Procedure 26, parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  Fed. R. Civ. P. 26(b)(1).

Pursuant to Rule 37, a party may move to compel discovery.  Fed. R. Civ. P. 37(a)(1).  A party moving to compel discovery bears the initial burden of establishing the relevance of the requested information.  *Morrison v. Phila. Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001).  A party that withholds documents on the basis of a privilege must do more than expressly claim privilege—they must "do so in a manner" that "will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).

**III.   DISCUSSION**

Corizon asserts that the documents related to the mortality review are protected from discovery by the patient safety work product privilege. Pursuant to the Patient Safety Quality Improvement Act, 42 U.S.C. § 299b-22(a)(2), patient safety work product is privileged and is not subject to discovery in a federal civil action. The statute defines patient safety work product as "any data, reports, records, memoranda, analyses (such as root cause analyses), or written or oral statements which are assembled by a provider for reporting to a patient safety organization and are reported to a patient safety organization. . ." *Id.* at § 299b-21(7)(A)(i)(I).

To merit the patient safety work product privilege, Corizon must, at a minimum, assert that it prepared the documents in question for the purpose of reporting to a patient safety organization. *Crawford v. Corizon Health, Inc.*, No. 17-113, 2018 WL 3361147, at *2 (W.D. Pa. July 10, 2018) (finding that the patient safety work product privilege did not apply to documents Corizon sought to withhold because Corizon did not assert that the documents were "assembled or developed *for the purpose* of reporting to a patient safety organization"). It is not enough that the documents were submitted to a patient safety organization—the documents must also have been assembled for the purpose of reporting to a patient safety organization. *Id.; see also Dunn v. Dunn*, 163 F.Supp.3d 1196, 1210 (M.D. Ala. 2016) ("[I]nformation that is not developed *for the purpose of* reporting to a patient safety organization does not become privileged merely because it is in fact reported to one.").

Following the decision in *Crawford*, Corizon again asserted the patient safety work product privilege in a different case in this district. In that case, Corizon "expressly articulated the requirements to trigger the application of the privilege." *Abran v. City of Philadelphia*, No. 18-cv-1107, ECF No. 97 at 3 (E.D. Pa. Nov. 8, 2019). The court in *Abran* distinguished

*Crawford* on the basis of Corizon's express articulation and found that Corizon's articulation sufficed to establish the privilege.[1]  *Id*.

Here, as in *Abran*, Corizon has asserted the statutory elements of the privilege, including that the documents were assembled for the purpose of reporting to a patient safety organization.  (Defs.' Opp. Br. at 3.)  However, it has not done any more than recite the elements of the statute.  We find that Corizon's bare recitation is insufficient, especially because there are at least two reasons to conclude that the documents in question were prepared for purposes other than reporting to a patient safety organization.

The first reason is that Corizon's contract with the City requires it to conduct the mortality review, as Corizon acknowledges in its brief.  (Defs.' Opp. Br. at 3-5.)  Corizon has not attempted to explain how it can assert that it assembled the documents for the purpose of reporting to a patient safety organization when it is contractually obligated to conduct mortality reviews.  The contract between Corizon and the City is an independent basis for the mortality review.  Even if the patient safety organization did not exist, Corizon would still be required to conduct the review and prepare the related documents.  This independent requirement to prepare the documents does not square with the Department of Health and Human Services' view that

---

[1] As Plaintiff notes, it is doubtful that the precise question presented in this case was before the court in *Abran*.  (Pl's. Br. at 8.)  Though the plaintiff in *Abran* sought documents that Corizon objected to under the patient safety work product privilege, it does not appear that the plaintiff in that case challenged whether Corizon met its burden in establishing the privilege by merely restating the statutory requirements.  And Defendants' reliance on the Third Circuit's affirmance of *Abran* is similarly misguided.  In an unpublished opinion, the Third Circuit stated that the district court did not abuse its discretion in managing discovery, but the Third Circuit did not address the substantive question of what Corizon must show to establish the patient safety work product privilege.  *Abran v. City of Philadelphia*, No. 20-3503, 2021 WL 5401542, at *5 (3d Cir. 2021).  Instead, this short section of the decision discussed plaintiff's misrepresentation that the district court did not rule on her discovery requests prior to granting summary judgment—nothing to do with the merits of the court's privilege decision.  *Id*.

the privilege is limited to information that a provider voluntarily collects and reports; it does not protect information that is the result of external obligations. *See Patient Safety and Quality Improvement Act of 2005—HHS Guidance Regarding Patient Safety Work Product and Providers' External Obligations*, Dep't of Health and Human Services, 81 Fed. Reg. 32655-56 ("The intent of the system established by the Patient Safety Act is to protect the additional information created through voluntary patient safety activities, not to protect records created through providers' mandatory information collection activities. For example, a provider may have an external obligation to maintain certain records about serious adverse events that result in patient harm. The document the provider prepares to meet its requirement about such adverse events is not [patient safety work product].").

A second independent reason for the creation of these documents relates to national accreditation standards for providers. Indeed, Corizon admits that its mortality review process is a key component of its accreditation by the National Commission on Correctional Health Care. (Defs.' Opp. Br. at 5.) Again, even if Corizon did not submit the mortality review documents to a patient safety organization, it would need to conduct the review and prepare the related documents to maintain its accreditation.

In another case in the Eastern District of Pennsylvania involving a mortality review report prepared by a different provider, Judge Sanchez ordered the disclosure of the report and noted its connection to accreditation standards. *Lopez v. Bucks Cty.*, No. 15-cv-5059, ECF No. 26 at 3 (E.D. Pa. April 15, 2016). Though that decision declined to recognize a medical review privilege in federal court—a state law privilege that is different from the statutory one at issue here—its reasoning extends to the facts of this case. In ordering the defendant provider to produce an unredacted version of the mortality review report, Judge Sanchez noted the "greater

need for public scrutiny of medical care in the prison context than in the ordinary hospital setting." *Id*.

Defendants fail to offer any support for their assertion that the documents in question were prepared for the purpose of reporting to a patient safety organization. That failure, combined with the independent requirements to conduct the review pursuant to Corizon's contract with the City and for its accreditation, and the need for adequate scrutiny of medical care in prisons, all counsel in favor of finding that the documents at issue here are not covered by the patient safety work product privilege.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's request for all documents prepared in connection with the mortality review relating to the death of Plaintiff's decedent, Jonathan Gleaves, Jr., is granted. An appropriate Order follows.

**BY THE COURT:**


*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**