**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EILEEN McNAMARA, as** | : | |
| **Administrator of the Estate of** | : | **CIVIL ACTION** |
| **JONATHAN GLEAVES, JR., deceased,** | : | **No. 20-4570** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| | : | |
| **Defendants** | : | |
| | : | |

## <u>ORDER</u>

**AND NOW**, this _____ day of _____, 2023, upon consideration of the Motion

for Summary Judgment of Defendants City of Philadelphia and Corrections Officer Gerald Slory,

and Plaintiff's response thereto, it is hereby **ORDERED** that the Defendants' Motion is granted.

Defendants are granted judgment in their favor on all counts.

BY THE COURT:

_____
**R. BARCLAY SURRICK, J.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **EILEEN McNAMARA, as** : | |
| **Administrator of the Estate of** : | **CIVIL ACTION** |
| **JONATHAN GLEAVES, JR., deceased,** : | **No. 20-4570** |
| : | |
| **Plaintiff,** : | |
| : | |
| **v.** : | |
| : | |
| **CITY OF PHILADELPHIA, et al.,** : | |
| : | |
| **Defendants** : | |
| : | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants City of Philadelphia and Corrections Officer Gerald Slory (collectively, the "City Defendants"), hereby file this Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Pursuant to Local Rule 7.1(c), and in support of this Motion for Summary Judgment, the City Defendants hereby incorporate by reference the attached Memorandum of Law as though fully set forth at length. The City Defendants respectfully request that this Court dismiss the claims asserted against them for the reasons set forth therein.

Respectfully submitted,

Date: January 31, 2023

/s/ *Katelyn L. Mays*
Katelyn L. Mays
Assistant City Solicitor
Pa. Attorney ID No. 324246
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5434 (phone)
215-683-5397 (fax)
katelyn.mays@phila.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  | |  |
|---|---|---|
| **EILEEN McNAMARA, as** | : | |
| **Administrator of the Estate of** | : | **CIVIL ACTION** |
| **JONATHAN GLEAVES, JR., deceased,** | : | **No. 20-4570** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| | : | |
| **Defendants** | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants the City of Philadelphia (the "City") and Corrections Officer Gerald Slory (collectively, the "City Defendants") hereby move for summary judgment on all claims asserted by Eileen McNamara, as Administrator of the Estate of Jonathan Gleaves, Jr., deceased, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## I.    INTRODUCTION

Plaintiff Eileen McNamara, as Administrator of the Estate of Jonathan Gleaves, Jr., asserts claims against the City Defendants for violations of Gleaves' constitutional rights pursuant to § 1983. Specifically, Plaintiff contends the City Defendants violated Gleaves' Eighth and Fourteenth Amendment rights under the United States Constitution because they were deliberately indifferent to his serious medical needs. Plaintiff's claims arise in connection with Gleaves' detention at the Curran-Frumhold Correctional Facility ("CFCF"), an intake facility in the Philadelphia Department of Prisons, for drug possession charges. Gleaves was later found unresponsive in his cell at CFCF in Philadelphia and eventually passed away at a hospital. Although this is

undoubtedly a tragic situation, Plaintiff's claims against the City Defendants should be dismissed, and judgment entered for the City Defendants, for the reasons set forth below.

## II.      STATEMENT OF FACTS

Defendants incorporate by reference the Statement of Facts filed herewith and highlight a discrete subset here for narrative context.

The undisputed evidence establishes that this case arises out of Jonathan Gleaves' detainment at CFCF from September 20, 2018 to September 21, 2018. Upon admission to the facility, Gleaves was assessed by medical professionals who determined that Gleaves was suffering from mild withdrawal symptoms. As a result, Gleaves was determined cleared to be housed at CFCF. Defendant Gerald Slory was the correctional officers working the 11 pm to 7 am shift when Gleaves was admitted in the B Building, also known as the Quarantine Unit, at approximately 1:00 am on September 20, 2018. Despite CFCF regulation that correctional officers are to conduct "tours" of the unit every thirty minutes, Defendant Slory only conducted tours from 1:00 am until approximately 3:20 am on September 20.

Shortly after 7:00 am on September 21, 2018, Corrections Officer Terrelle Jones relieved Defendant Slory from his shift and conducted the first tour of the 7 am to 3 pm shift. During the tour, Officer Jones noted that Gleaves was motionless on his bunk with secretions around his mouth. Officer Jones called for medical assistance who arrived to take over care, and Gleaves was transferred to Nazareth Hospital where he was treated for possible opiate overdose. A CT scan of Gleaves' brain was performed and interpreted to demonstrate a developing edema within the cerebellum. Gleaves was subsequently transferred to Hahnemann University Hospital, admitted to a critical care unit in care of the neurosurgery team, and further assessed by the pulmonary/critical care team. Medical staff at Hahnemann Hospital unsuccessfully attempted ventilator changes and

2

other measures to improve Gleaves' oxygenation. Gleaves eventually suffered several cardiac arrests and was pronounced deceased on September 21, 2018, at 1:09 pm.

At the time of the above-described incident, the Philadelphia Department of Prisons had policies and procedures in place regarding the health of inmates, regarding obligation to provide inmates with physical and behavioral health and access to health care professionals, and regarding the frequency in which correctional officers were to conduct tours of the unit they were assigned.

**III.      STANDARD OF REVIEW**

The court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *See id.* All inferences must be drawn, and all doubts resolved in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985).

On motion for summary judgment, the moving party bears the initial burden of identifying these portions of the record that it believes demonstrate the absence of material fact disputes. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the moving party and may not rest on mere denials. *See id.* at 321, n.3; *First Nat'l Bank of Pa. v. Lincoln Nat'l Life Ins. Co.*, 824 F.2d 277, 282 (3d Cir. 1987).

In a case where the non-moving party is the plaintiff and therefore bears the burden of proof, the non-moving party must, by affidavits or by the depositions and admissions on file, "make a showing sufficient to establish the existence of [every] element essential to that party's case." *Celotex*, 477 U.S. at 322-24. The "non-moving party must adduce more than a mere scintilla of evidence in its favor" to defeat the moving party's summary judgment motion. *See Williams v. Borough of West Chester, Pa*., 891 F.2d 458, 460 (3d Cir. 1989). Although all justifiable inferences must be drawn in favor of the non-moving party, the "moving party is entitled to summary judgment where no reasonable resolution of conflicting evidence and inferences therefrom could result in a judgment for the non-moving party." *Schwartz v. Hospital of Univ. of Pa*., No. 88-4865, 1993 WL 153810, at *2 (E.D. Pa. May 7, 1993). Furthermore, the "[p]laintiff cannot simply reassert factually unsupported allegations in its pleadings." *Poles v. St. Joseph's Univ*., 1995 WL 542246, at *5 (E.D. Pa. Sept. 11, 1995) (citing *Celotex*, 477 U.S. at 325). "Plaintiff must present affirmative evidence in order to defeat [a] properly supported motion for judgment." *Id.*

## IV.    ARGUMENT

### A. Plaintiff's Claims Against Slory Fail Because Plaintiff Has Failed to Create any Genuine Issue of Materials Fact as to His Deliberate Indifference to a Serious Medical Need.

Plaintiff's claims against Defendant Slory fail because there is no record evidence that Gleaves was suffering from any demonstrable serious medical need or that Slory was subjective aware of—and disregarded—an excessive risk to Gleaves' health or safety.

The due process rights of pretrial detainees under the Fourteenth Amendment incorporate the Eighth Amendment standard, under which prison officials are liable for constitutional violations when they are "deliberately indifferent to the serious medical needs of an inmate." *Despaigne v. Crolew*, 89 F. Supp. 2d 582, 585 (E.D. Pa. 2000). In order to prove deliberate indifference under this standard, a plaintiff must demonstrate that the individual who allegedly did

4

not receive medical care displayed objective signs of a "sufficiently serious" medical need and that the defendants were *subjectively aware* of a substantial risk of serious harm but nonetheless made the deliberate choice to take no action. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Fox v. Horn*, No. 98-5279, 2000 WL 49374, at \*\*3-4 (E.D. Pa. Jan. 21, 2000); *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002). Put differently, under the standards set forth by the United States Supreme Court in *Farmer*, for liability to attach "defendants have to be aware of the facts which cause one to infer that a substantial risk of harm exists, and [must] actually make the inference." *Fox*, 2000 WL, at \*4 (citing *Farmer*, 511 U.S. at 837). Courts refer to these two separate requirements as the "objective" and "subjective" components of the deliberate indifference standard. *See e.g., Hankey v. Wexford Health Sources, Inc.*, 383 F. App'x 165, 168-69 (3d Cir. 2010) (citing *Pinchak*, 294 F.3d at 499)). Here, Plaintiff has failed to adduce evidence sufficient to create a genuine issue of material fact as to either of these requirements.

1. There is No Record Evidence that Gleaves had a Serious Medical Need that was Obvious to Reasonable People in Defendant Slory's Position.

A medical need is "sufficiently serious" for Eighth Amendment purposes if it "has been diagnosed by a physician as requiring treatment or [] is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Talbert v. Corizon, Inc.*, 711 Fed. App'x 668, 670 (3d Cir. 2017) (quoting *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). While undoubtedly Gleaves did eventually tragically suffer from a serious medical need, there is no record evidence in this case that a lay person in the position of Defendant Slory should have (or would have) believed that Gleaves was in danger and suffering a serious medical need.

Although Defendant Slory likely knew Gleaves was in withdrawal, medical personnel cleared Gleaves to be placed in a cell, meaning his symptoms were mild enough to not require immediate medical attention. Ex. D, CITY0044. It is especially significant that medical

5

professionals performed a physical examination on Gleaves and obtained responses to an extensive medical questionnaire, found his withdrawal symptoms to be mild, and declared him not to be in immediate medical distress. *Id.* In other words, none of the medical professionals trained in detecting the signs of medical distress believed Gleaves was exhibiting signs of a stroke or was otherwise in any danger at the time of intake. Even Plaintiff's own medical expert, Dr. Joseph Caleb McCall agreed that Gleaves presented with "mild," possibly bordering on "moderate" withdrawal symptoms (Ex. E, McCall Dep. Tr. 59:6) and demonstrated no signs of stroke at intake (*Id*. 22:6-24).

Finding that Defendant Slory should have been aware of a significant medical need that nobody else appreciated would impose an unreasonably high burden on correctional officers.

        2.   <u>There is No Record Evidence that Defendant Slory Was Subjectively Aware of a Substantial Risk of Harm to Gleaves.</u>

An even stronger reason for judgment in Defendant Slory's favor is the sheer absence of record evidence that he was subjectively aware that Gleaves was experiencing a serious medical issue. As noted by the Supreme Court, "an official's failure to alleviate a significant risk that he *should have perceived but did not,* while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838 (emphasis added).

In *Fox v. Horn*, this Court applied Farmer's subjective analysis and found that correctional officers who ignored an inmate's cries (and those of his fellow inmates in other cells) for medical attention for nine hours while the inmate vomited were not deliberately indifferent to his medical needs. *See* 2000 WL 49374 (E.D. Pa. Jan. 21, 2000). Even though the defendants *should* have been aware of the plaintiff's illness given his cries and pleas, the absence of record evidence as their *actual awareness* of such illness necessitated dismissal of the claims. *See id*. at *3-4. Notably, this Court found that the defendants' failure to comply with proper prison policy (i.e., by ignoring the

6

plaintiff's cries for help) was insufficient to create a genuine issue of fact as to their deliberate indifference, even though such non-compliance was the very reason the officers were subjectively unaware of the detainee's condition. *See id.* at \*4 (explaining that, under *Farmer*, "even if the Defendant Corrections Officers should have been aware of [the plaintiff's] illness, but were not as a result of their non-compliance with proper procedures, there is not a cognizable claim for an Eighth Amendment violation."). Other decisions have applied the same principle and reached the same results. *See e.g., Hinneburg v. Miron*, 676 F. App'x 483, 487-88 (6th Cir. 2017) (finding that correctional officers' awareness of inmate's intoxication was insufficient to demonstrate their awareness of any significant medical needs); *Watkins v. City of Battle Creek*, 273 F.3d 682, 686 (6th Cir. 2001) (no deliberate indifference to an inmate's serious medical needs when inmate died after swallowing drugs despite the fact that one officer said he would check on detainee but failed to do so).

As such, even accepting as true that Defendant Slory failed to conduct tours every thirty minutes during his shift, and accepting as true that this was a violation of the policy of the Philadelphia Department of Prisons, this still does not rise to the level of deliberate indifference. *See Collins v. City of Harker Heights*, 503 U.S. 115, 127 at n.10 (1992) (negligent conduct by a state official, even though causing an injury, does not constitute a deprivation of a right secured by the Due Process clause); *Rose v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (allegations of negligence are not sufficient to establish a constitutional violation as the "inadvertent failure to provide adequate medical care cannot be said to constitute an "unnecessary and wanton infliction of pain[.]") (internal quotation marks omitted)); *see also Delker v. Blaker*, No. CIV.A. 09-710, 2012 WL 726415, at \*6 (W.D. Pa. Mar. 1, 2012) ("Simply put, the policies of the Department of Corrections and the Eighth Amendment are not the same[.]").

7

Indeed, this Court has already found that it is not enough to show a failure to act violated a directive or that an officer arguably should have known of an inmate's condition. *See Wichterman v. City of Philadelphia*, No. 16-5796, 2019 WL 3216609, at *7 (E.D. Pa. July 27, 2019) (citing *Fox v. Horn*, No. 98-5279, 2000 WL 49374, at *4 (E.D. Pa. Jan. 21, 2000)). Consistent with this reasoning, other courts, too, have held that the failure to conduct tours does not rise to the level of deliberate indifference. *See Martin v. Benson Lt.*, No. 115-CV-01062, 2017 WL 119407, at *5-6 (S.D. Ind. Jan. 12, 2017) (where the defendant officers failed to conduct tours as required and several hours passed between tours, holding "this failure does not rise to the level of deliberate indifference").

Following the Eighth Amendment deliberate indifference standard, Defendant Slory was not told that Gleaves had a medical condition that required medical attention. Moreover, there is no evidence that Defendant Slory observed obvious signs of a medical issue requiring medical attention. In fact, Defendant Slory testified at his deposition that during his tours, he "had a good vision to see that there wasn't anything coming out of [Gleaves'] mouth" (Slory Dep. Tr. 12: 22-24), and that, at 6:56 am, Defendant Slory trained his flashlight on Gleaves, and "didn't see any sign that [Gleaves] was showing that he was in any distressed situation." (*Id*. p. 111:1-3). *See Perkins v. Schwappach*, 399 Fed. App'x 759, 761 (3d Cir. 2010) (For a corrections officer to be liable, the inmate-plaintiff must show that the officer knew of and disregarded an excessive risk to the prisoner's health; even if the corrections officer knew of a risk to the prisoner's health, he still must disregard the risk that the prisoner faced a substantial risk of serious injury.); *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (noting the deliberate indifference standard "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients").

While Plaintiff may point to the testimony of Correctional Officer Wilson that Gleaves'
cellmate stated to Officer Wilson and Officer Jones that he had pushed the call button and called
out in an attempt to alert officers that Gleaves needed medical attention (Ex. H, Wilson Dep. Tr.
62:9-22, 78:7-22, 80:5-25, 81:1-8), such a statement is inadmissible hearsay given Plaintiff's
failure to depose Gleaves' cellmate. *See Tomaszewski v. City of Philadelphia*, 460 F. Supp. 3d 577,
596 (E.D. Pa. 2020) ("[T]he mere possibility that [a] hearsay statement will be presented in [the]
form of admissible evidence at trial does not warrant consideration of hearsay evidence at [the]
summary judgment stage.") (internal citation and quotation marks omitted) (quoting *Williams v.
Pennridge Sch. Dist.*, No. CV 15-4163, 2018 WL 6413314, at \*11 n.5 (E.D. Pa. Dec. 6, 2018)).

There is plainly no credible evidence in this case that Defendant Slory perceived facts from
which to infer a substantial risk, actually drew that inference, and then disregarded it. Accordingly,
Defendant Slory was not deliberately indifferent under the Eighth Amendment standard, and
judgment should be entered for him on this claim.

### B. Defendant Slory is Entitled to Qualified Immunity

Qualified immunity protects Defendant Slory from liability in this case. Government
officials engaged in discretionary functions are entitled to qualified immunity from § 1983 suits
as long as their conduct "does not violate clearly established statutory or constitutional rights of
which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).
A right only qualified as "clearly established" if its "contours…are sufficiently clear that *every*
reasonable official would have understood that what he is doing violates that right." *See Ashcroft
v. Al-Kidd*, 563 U.S. 731, 741 (2011) (citations and quotations omitted) (emphasis added).
Government actors are protected by qualified immunity unless "existing precedent [has] placed
the statutory or constitutional question beyond debate." *See id*. Put differently, qualified immunity

9

"protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Two prongs must be analyzed to determine whether an official is entitled to qualified immunity: (1) whether the officers' conduct, viewed in a light most favorable to the plaintiff, violated the constitution, and (2) whether the constitutional right at issue was "clearly established," such that a reasonable officer would have understood that his actions were not lawful in the situation with which he was confronted. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). If there is not clearly established rule prohibiting the officer from acting as he did in the specific situation at issue, the officer is entitled to qualified immunity. *See id.* at 209.

Here, in determining whether Defendant Slory is entitled to qualified immunity, the Court asks whether it "would have been clear to a reasonable [correctional] officer" in their position that their decision not to seek medical attention for Gleaves was "unlawful in the situation [they] confronted." *Carswell v. Borough of Homestead*, 381 F.3d 235, 243 (3d Cir. 2004). The question of lawfulness must be analyzed through the lens of the particular situation with which he was confronted; that is, a detainee at CFCF showing mild symptoms of withdrawal with no signs of any medical emergency or stroke symptoms according to the medical staff who examined him at intake specifically to ascertain whether such medical issues existed.

Viewing all facts in a light most favorable to Plaintiff, there is no basis to conclude that the unconstitutionality of not seeking medical attention sooner was "clearly established." Considering that the medical professionals who examined Gleaves found no red flags or signs of serious medical distress, and the absence of actual knowledge by Defendant Slory that Gleaves was in medical distress, there is no basis on which to conclude that a reasonable correctional officer in his position would believe that immediate medical attention was needed for Gleaves. Thus,

Plaintiff fails both to establish a constitutional violation, as discussed *infra* in Section III.A, and to establish the violation of a clearly established right. Officer Slory is entitled to qualified immunity for both these reasons, and judgment in his favor.

### C. Plaintiff's Claims Against the City of Philadelphia Fail as a Matter of Law

Plaintiff alleges the City is liable because it "failed, with deliberate indifference, to establish policies, procedures, and training regarding the protection of persons with substance abuse issues admitted to the Philadelphia Department of Prisons facilities." Compl. ¶ 75.

Plaintiff's allegations are an attempt to sue the City under *Monell v. Dep't of Social Services of New York,* 436 U.S. 658 (1978). In adjudicating *Monell* claims, "courts have recognized a two-path track to municipal liability under § 1983, depending on whether the allegation is based on municipal policy or custom." *Mulholland v. County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (citations and quotations omitted). A policy occurs when a decisionmaker with final authority "issues an official proclamation, policy, or edict," while a custom occurs when practices are "so permanent and well-settled as to virtually constitute law." *See id.* (citations and quotations omitted).

*Monell* liability must be founded upon evidence that the government unit itself supported a violation of constitutional rights, while identifying the policymaker and establishing his/her deliberate indifference. *Bielevicz v. Dubinon*, 915 F.2d 845, 849-50 (3d Cir. 1990). Proof of a single incident or unconstitutional activity is not sufficient to impose liability under *Monell*. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). Instead, plaintiff must prove that the municipality's alleged unconstitutional practices are "so widespread as to have the force of law." *Monell*, 436 U.S. at 694.

11

Here, Plaintiff's *Monell* claim fails because the City does in fact have policies, procedures, and training in place for the treatment of detainees needing medical attention due to drug withdrawal and there is no custom of prison staff ignoring or otherwise behaving with deliberate indifference to the serious medical needs of detainees. Moreover, there is no evidence of record in this case that any municipal "policymaker" was deliberately indifferent to a pattern of constitutional violations by CFCF employees—whether Defendant Slory or others—with respect to the treatment of detainees experiencing drug withdrawal.

    1.   <u>Plaintiff's Failure to Establish an Underlying Constitutional Violation Necessitates Judgment in the City's Favor on His *Monell* Claim.</u>

Plaintiff's *Monell* claim fails for numerous reasons, the first one being the fact that Plaintiff cannot prevail on his underlying deliberate indifference claim against Defendant Slory. In order to maintain a claim for municipal liability, Plaintiff must first establish a constitutional violation by a municipal actor. *See e.g., City of Los Angeles v. Heller*, 475 U.S. 796, 798-88 (1986); *Kneipp v. Tedder*, 95 F.3d 1199, 1212 n.26 (3d Cir. 1995) (Section 1983 claim cannot stand if the underlying constitutional claim is invalid); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1149-50 (3d Cir. 1995) (unless the plaintiff establishes a constitutional injury, it is irrelevant for purposes of § 1983 liability whether the municipality's policies caused an injury), *cert denied* 516 U.S. 858 (1995).

Here, as discussed above, Plaintiff's claim against Defendant Slory fails. Therefore, because no underlying constitutional violation occurred, Plaintiff's *Monell* claim likewise fails.

    2.   <u>Plaintiff has Adduced No Evidence of a Municipal "Policy" or "Custom" that Caused his Alleged Constitutional Harms.</u>

Even if Plaintiff's underlying claim survived summary judgment, his claim against the City fails because there is no record evidence that the constitutional harms Gleaves allegedly suffered resulted from any policy or custom of the City.

First, at the time of the incident at issue, the City and specifically, the Philadelphia Department of Prisons employed policies regarding the treatment of detainees who need medical attention. *See* Ex. P, CITY0358-0365. Prison directives also expressly dictate that each arrestee received an individualized medical screening (including questions and observations relating to drug use). *See id.* At this time, a nurse determines if that individual is fit for being housed in a cell or should be rejected from the facility and taken to the hospital. *See id.* The Philadelphia Department of Prisons further had in place a policy regarding the obligation to provide inmates with physical and behavioral health care. *See* Ex. Q, CITY0393-403. Per the policy, each inmate is to be provided "access to a Qualified Health Care Professional (QHCP) who will screen, provide treatment, and/or refer inmates for ongoing or emerging health care problems as appropriate, normally on a scheduled basis." Ex. Q, CITY0393.

Similarly, there is no evidence that the City, through any policymaker, had knowledge of or acquiesced in a widespread custom of failing to properly identify, monitor, or treated addicted detainees. Further, there is no record evidence that Defendant Slory was ever before accused of conduct (or found to have in fact engaged in any conduct) that resulted in any inmate's death or other adverse health consequence. Without more, there is no basis to conclude that Gleaves' death was caused by any unconstitutional municipal policy or custom.

      3.  <u>Plaintiff has Adduced No Evidence of Deliberate Indifference on the Part of Any Municipal Policymaker.</u>

Finally, there is no record evidence that any City of Philadelphia policymaker was deliberately indifference to a risk of harm to Gleaves or any similarly situated persons resulting from the City's policies and procedures or the continued employment of Defendant Slory. To prove a *Monell* claim, the plaintiff must demonstrate that an official with the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled

13

custom. *See e.g., Jett v. Dallas Ind. School Dist.*, 491 U.S. 701, 737 (1989) (plaintiff must prove decision of final policymaker caused the deprivation of rights by policies or by acquiescence in a longstanding custom or practice that constitutes a standard operating procedure of the local governmental entity).

Once a policymaker is identified, plaintiff must further present "scienter-like evidence of indifference on the part of [such] policymaker." *Beswick v. City of Philadelphia*, 185 F. Supp. 2d 418, 427 (E.D. Pa. 2001). Liability can only attach if record evidence demonstrates that the policymaker made a deliberate choice to follow a particular course of action from among various alternatives. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Moreover, the plaintiff must adduce evidence establishing that such policymaker was aware of similar unlawful conduct in the past but, with deliberate indifference, failed to take precautions against future violations, the failure of which directly led to the plaintiff's injury. *See e.g., Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990).

In this case, no such evidence exists. The record contains no "scienter-type evidence" of any policymaker's deliberate indifference nor is there any evidence at all that any City official was aware of a pattern of failing to adequately respond to the needs of individuals suffering from addiction withdrawal but deliberately failed to address it. Accordingly, judgment should be granted in the City's favor on Plaintiff's *Monell* count.

4. Plaintiff has Adduced No Evidence that the City Failed to Train Officers

Plaintiff has failed to set forth evidence to establish a failure to train claim under *Monell*. "A municipality's failure to adequately train its officers and employees [also] gives rise to a cause of action under Section 1983 if the deficient training reflects a deliberate indifference to an

14

individual's civil right and is closely related to the ultimate injury." *Tirado v. Montgomery Cnty.,* No. 12–00552, 2013 WL 1285487, at *7 (E.D. Pa. Mar.29, 2013) (internal citations omitted).

"Establishing municipal liability on a failure to train claim under § 1983 is difficult." *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). Because a plaintiff will always be able to point to something more a municipality could have done, the standard of fault under this theory is high. *City of Canton v. Harris*, 489 U.S. 378, 391-92 (1989). "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at 390–91. Accordingly, the municipality's deficiency must be specifically identified, closely related to the ultimate injury, and amount to deliberate indifference to its inhabitants' constitutional rights. *Id.* at 391-92. It is not sufficient that a plaintiff can point "better or more training" that might have avoided the injury—such a claim can almost always be made. *Id.* at 391.

Plaintiff has not adduced evidence that the City was aware of the need for "better" or "more" training but consciously decided to forego such additional or better training. Plaintiff has neither identified the specific training the City should have offered which would have prevented the deprivation of Gleaves' constitutional rights, nor has Plaintiff established such training was not provided. As pointed out in the Statement of Facts, the evidence shows that the City does in fact train corrections officers with regard to the health of inmates. The training informs officers of when and how to conduct guard tours to check on the status of inmates. (Ex. G, Slory Dep. Tr. 64:6-10; Ex. H, Wilson Dep. Tr. 32:23-25, 34:22-25, 35:1-2). Officers are informed of the withdrawal protocol which informs officers when certain inmates with opioid or other drug abuse history are to be escorted from their cells to ensure they are seen by medical professionals. (Ex. R, C. Jones Dep. Tr. 26:14-20). Officers are also trained that all inmates must go through the intake

process, which includes an assessment by medical professionals. (Ex. H, Wilson Dep. Tr. 29:2-22). It is for these reasons that Plaintiff's failure to train claim fails.

## V.       CONCLUSION

For the reasons set forth above, the City Defendants respectfully request that this Court grant the Motion for Summary Judgment and enter judgment in their favor.

Date:  January 31, 2023                           Respectfully submitted,

/s/ *Katelyn Mays*
Katelyn Mays
Assistant City Solicitor
Pa. Attorney ID No. 324246
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5434
katelyn.mays@phila.gov

16

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **EILEEN McNAMARA, as** : | |
| **Administrator of the Estate of** : | **CIVIL ACTION** |
| **JONATHAN GLEAVES, JR., deceased,** : | **No. 20-4570** |
| : | |
| **Plaintiff,** : | |
| : | |
| **v.** : | |
| : | |
| **CITY OF PHILADELPHIA, et al.,** : | |
| : | |
| **Defendants** : | |
| : | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date below, Defendants City of Philadelphia and Correctional Officer Gerald Slory's Motion for Summary Judgment and accompanying attachments and exhibits were filed via the Court's electronic filing system and are available for downloading.

Date:  January 31, 2023                               Respectfully submitted,

/s/ *Katelyn Mays*
Katelyn Mays
Assistant City Solicitor
Pa. Attorney ID No. 324246
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5434
katelyn.mays@phila.gov