**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **EILEEN McNAMARA, as Administrator of the Estate of JONATHAN GLEAVES, JR., deceased,** | : : : : | **CIVIL ACTION** No. 20-4570 |
| **Plaintiff,** | : : | |
| **v.** | : : | |
| **CITY OF PHILADELPHIA, et al.,** | : : | |
| **Defendants** | : : : | |

## <u>FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>

Defendants City of Philadelphia and Correctional Officer Gerald Slory, by and through their undersigned counsel, hereby submit the following material facts in support of summary judgment on all claims against them:

1. On the evening of September 19, 2018, Jonathan Gleaves, Jr. was taken into custody on a warrant related to drug possession charges. Ex. A, CITY0001-04.

2. The next afternoon, September 20, 2018, Gleaves was admitted to Curran-Frumhold Correctional Facility ("CFCF"), an intake facility in the Philadelphia Department of Prisons ("PDP"). Ex. B, CITY0177.

3. That same evening, Gleaves was seen by Dr. Elizabeth Bradley, MD and Matu Gaye, RN for his intake and screening assessment while being admitted to CFCF. *Id.*

4. Gleaves' vital signs were recorded, and he was asked for any prior medical problems and current complaints. Medical staff also performed a physical examination, and Gleaves completed an extensive questionnaire. Ex. C, CITY0184-189.

5.    Gleaves reported recent drug use including "heroin 10 bags daily, Xanax 2mg bar 4-6 tablet daily, Fentanyl 100 mg daily…" Ex. C, CITY0184.

6.    Gleaves indicated his most recent drug use was September 19, 2018, the day before the intake assessment. *Id.*

7.    He also reported a history of asthma and Hepatitis C Virus infection. *Id.*

8.    According to the assessment, Gleaves reported "running nose, dizziness, leg cramps, anxiety, bone aches, nausea/vomiting [and] stomach cramps[.]" *Id.*

9.    Medical staff also included the BWS-C (Benzodiazepine Withdrawal Syndrome) screening tool, which scored six, and the COWS (Clinical Opiate Withdrawal Scale) tool, which scored ten. These scores were noted to be consistent with signs of mild benzodiazepine and opiate withdrawal. Ex. C, CITY0186-88.

10.    With regard to the physical assessment, Gleaves' pupils were noted to be equal in size and normally reactive to light, his skin was warm, and there were no signs of visible injury. Ex. C, CITY0186.

11.    Gleaves' assessment demonstrated a Glasgow Coma Scale of 15, consistent with normal eye, motor, and verbal responses. *Id.*

12.    Overall, medical staff concluded Gleaves was awake, alert, and oriented and found his testing results to be consistent with "withdrawal protocol medication…" and he was informed to contact medical at any time if his condition worsened. Ex. D, CITY0044.

13.    Plaintiff's own medical expert, Dr. Joseph Caleb McCall, agreed that Gleaves presented with "mild" possibly bordering on "moderate" withdrawal symptoms (Ex. E, McCall Dep. Tr. 59:6) and demonstrated no signs of stroke at intake (*Id.* 22:6-24).

14.    Gleaves was placed on withdrawal assessment for five days. *Id.*

15.    There were no medical records of a withdrawal assessment for the shift following his assessment, between September 20 at 11:00 pm and September 21 at 7:00 am. Ex. F, Jeoboham Dep. Tr. 41:20-42:1.

16.    On September 20, 2018, Defendant Correctional Officer Gerald Slory was working the 11:00 pm to 7:00 am shift in the B Building, also known as the Quarantine Unit of CFCF. Ex. G, Slory Dep. Tr. 49:20-24, 51:1-4.

17.    Defendant Slory worked this shift solo. *Id.* 58:5-10.

18.    Around 1:00 am, Defendant Slory saw Gleaves first arrive on the housing unit with five other inmates. *Id.* 80:1-17.

19.    Corrections officers are trained to perform "tours" of the unit they are monitoring every thirty minutes. Ex. G, Slory Dep. Tr. 64:6-10; Ex. H, Wilson Dep. Tr. 32:23-25, 34:22-25, 35:1-2; Ex. I, T. Jones Dep. 55:9-22.

20.    Defendant Slory's logbook states that during the approximate six hours that Gleaves was on the housing unit, he conducted tours at 1:11 am, 1:42 am, 2:24 am, 2:58 am, 3:49 am, 4:29 am, 5:19 am, 6:12 am, and 6:43 am. Ex. J, CITY0019-0025.

21.    For purposes of summary judgment, however, Defendants concede that Defendant Slory only conducted four of the nine tours logged (at 1:11 am, 1:42 am, 2:24 am, 3:22 am.). Ex. G, Slory Dep. Tr. 85-87, 98-101.

22.    Shortly after 7:00 am on September 21, 2018, Corrections Officer Terrelle Jones relieved Defendant Slory from his shift and conducted the first tour of next shift. Ex. I, T. Jones Dep. Tr. 31-33.

23.    Officer Jones' partner that shift was Corrections Officer Charlene Wilson. Ex. H, Wilson Dep. Tr. 18:7.

24.    Officer Jones noted that Gleaves was motionless on his bunk and found secretions around his mouth. Ex. I, T. Jones Dep. Tr. 20:19-22.

25.    Officer Jones called for Officer Wilson to come to Cell 1 where Gleaves was housed. Ex. H, Wilson Dep. Tr. 17:6-7.

26.    When Officer Wilson arrived, Gleaves' cellmate was agitated and "talking a lot" and Officer Wilson noticed Gleaves was naked and "foaming at the mouth." *Id.* 17:9-14.

27.    Officer Jones called for medical assistance who found Gleaves to be "awake [with his] eyes open" but "non-verbal."  Ex. K, CITY0034-35.

28.    At approximately 7:15 am, staff called for an ambulance and moved Gleaves from his cell to the medical unit for assessment by Dr. Lalitha Trivikram. *Id.*

29.    Dr. Trivikram's team administered suctioning of the mouth and naloxone to treat or reserve opiate intoxication as well as lorazepam to treat seizures before Emergency Medical Services ("EMS") arrived, took over care, and then transported Gleaves to Nazareth Hospital's Emergency Department. *Id.*

30.    During the hospital course at Nazareth, providers again treated Gleaves with naloxone for possible opiate overdose, but he did not respond and was intubated. Ex. L, McNamara000447-454.

31.    A CT scan of Gleaves' brain was performed and interpreted to demonstrate a developing edema within the cerebellum. *Id.*

32.    An x-ray of the chest revealed "bilateral patchy infiltrates left lung greater than right which suggests the possibility of aspiration given the history." *Id*.

33.     Gleaves was subsequently transferred to Hahnemann University Hospital and admitted to a critical care unit in care of the neurosurgery team and further assessed by the pulmonary/critical care team. Ex. M, McNamara000385.

34.     Medical staff at Hahnemann Hospital unsuccessfully attempted ventilator changes and other measures to improve Gleaves' oxygenation. Gleaves eventually suffered several cardiac arrests and was pronounced deceased on September 21, 2018, at 1:09 pm. Ex. N, McNamara000404.

35.     The autopsy report lists the cause of death as drug intoxication (Cocaine, Fentanyl, Xylazine). Ex. O, McNamara000519.

36.     At the time of the above-described incident, the Philadelphia Department of Prisons had policies and procedures in place regarding the health of inmates. For example, the Prisons Policies and Procedures direct that it is the policy of the PDP to screen all inmates at intake to obtain and physical and behavioral health-related information. Ex. P, CITY0358-365.

37.     Per the policy, this information "is essential for making initial housing assignments and managing immediate and routine inmate health issues." *Id.*

38.     The policy further details the purpose and requirements of the intake health screening as well as medical staffing by shift. *See id.*

39.     The Philadelphia Department of Prisons further had in place a policy regarding the obligation to provide inmates with physical and behavioral health care. *See* Ex. Q, CITY0393-403.

40.     The policy further directs that each inmate is to be provided "access to a Qualified Health Care Professional (QHCP) who will screen, provide treatment, and/or refer inmates for ongoing or emerging health care problems as appropriate, normally on a scheduled basis." Ex. Q, CITY0393.

41.     The Philadelphia Department of Prisons also trains corrections officers with regard to safety of inmates; specifically, officers are trained on when and how to conduct guard tours. Ex. G, Slory Dep. Tr. 64:6-10; Ex. H, Wilson Dep. Tr. 32:23-25, 34:22-25, 35:1-2; Ex. I, T. Jones Dep. 55:9-22.

42.     Officers are informed of the withdrawal protocol which informs officers when certain inmates with opioid or other drug abuse history are to be escorted from their cells to ensure they are seen by medical professionals. Ex. R, C. Jones Dep. Tr. 26:14-20.

43.     Officers are also trained that all inmates must go through the intake process, which includes an assessment by medical professionals. Ex. H, Wilson Dep. Tr. 29:2-22.

Date:  January 31, 2023

Respectfully submitted,

/s/ *Katelyn Mays*
Katelyn Mays
Assistant City Solicitor
Pa. Attorney ID No. 324246
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5434
katelyn.mays@phila.gov