## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EILEEN A. McNAMARA, as Administrator of the :
of the ESTATE OF JOHNATHAN GLEAVES, JR. :
                v.                  :      NO. 20-CV-4570
CITY OF PHILADELPHIA; CORIZON HEALTH, :
GERALD SLORY, ELIZABETH BRADLEY,   :
LALITHA TRIVIKRAM, MATU GAYE, and   :
JOHN DOE(S)                        :

## ORDER

**AND NOW**, this _____ day of _____, 2025, upon consideration

of the Motion of Defendants, Corizon Health, Inc., Elizabeth Bradley, Lalitha Trivikram, and

Matu Gaye, to Stay All Proceedings unless and until the U.S. Bankruptcy Court for the Southern

District of Texas (Houston Division) in *In Re Tehum Care Services, Inc.* (f/k/a Corizon Health,

Inc.), Case No. 23-90086 enters an Order which permits the prosecution of the above-captioned

matter to continue.

**BY THE COURT:**

_____
                                                  J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EILEEN A. McNAMARA, as Administrator of the  :
of the ESTATE OF JOHNATHAN GLEAVES, JR. :
                    v.              :      NO. 20-CV-4570
CITY OF PHILADELPHIA; CORIZON HEALTH, :
GERALD SLORY, ELIZABETH BRADLEY,     :
LALITHA TRIVIKRAM, MATU GAYE, and    :
JOHN DOE(S)                             :

## MOTION OF DEFENDANTS, CORIZON HEALTH, INC.,   ELIZABETH BRADLEY, LALITHA TRIVIKRAM, AND MATU GAYE, TO STAY THIS ACTION UNLESS THE U.S. BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS IN *In Re Tehum Care Services, Inc.* ISSUES AN ORDER PERMITTING THE PLAINTIFF TO FURTHER PROSECUTE THE ACTION

Moving Defendants, Corizon Health, Inc., Elizabeth Bradley, Lalitha Trivikram, and Matu Gaye, respectfully requests that the Court enter an Order staying this action until the U.S. Bankruptcy Court for the Southern District of Texas (Houston Division) in *In Re Tehum Care Services, Inc.* (f/k/a Corizon Health, Inc.), Case No. 23-90086 (CML), (the "Bankruptcy Case") issues an Order deciding the Omnibus Motion to Enjoin attached hereto as **Exhibit A** (the "Motion to Enjoin")[1]. As discussed below, the Motion to Enjoin seeks an Order from the Bankruptcy Court clarifying that actions brought against the Debtor's former employees are enjoined consistent with the administration and intended consummation of the now-effective Bankruptcy Plan, including the existing injunctions and releases therein. As the Bankruptcy Court has exclusive jurisdiction to determine issues related to the Plan and its injunctions, the present action should be stayed unless the Bankruptcy Court determines that it can continue. The Defendants will promptly inform this Court of the Bankruptcy Court's Order. Tehum Care

---

[1]     The Motion to Enjoin was served on the Plaintiff.

Services, Inc. f/k/a Corizon Health, Inc. (the "Debtor") commenced a Chapter 11 case in the United States Bankruptcy Court for the Southern District of Texas. By Order dated March 3, 2025 [Doc. 2014], the Bankruptcy Court confirmed the First Modified Joint Chapter 11 Plan of Reorganization of the Tort Claimants' Committee, Official Committee of Unsecured Creditors and Debtor (the "Plan"). All capitalized terms herein have their meaning as defined in the Plan unless noted. The Plan is now effective.

Defendants, Corizon Health, Inc., Elizabeth Bradley, Lalitha Trivikram, and Matu Gaye, are current employees of the Debtor. As the Motion to Enjoin explains, the Debtor and its former employees are included as "Released Parties" under the Plan. Plan, Art. I, ¶ 175. In furtherance of the Plan's consummation, the Plan contains certain injunctions and a Consensual Claimant Release that will fully release the Plaintiff's Causes of Action against the Defendants as long as the injunctions and Releases do not terminate or become void. *See* Plan, Art. IV.B.7 and IX.D. When the Plan became effective, and in compliance with any meet and confer requirements, Defendant sent a letter to Plaintiff requesting that the Plaintiff stipulate to stay this action consistent with the Plan. To date, Plaintiff has not agreed to so stipulate.

The Motion to Enjoin before the Bankruptcy Court requests that the Bankruptcy Court enter an Order confirming that all Plaintiffs with actions that will be released upon the Final Payment Date are enjoined from further prosecuting their actions as long as the injunctions and Releases do not terminate or become void. Among the existing injunctions discussed in the Motion to Enjoin, the Bankruptcy Court precluded and enjoined "actions to interfere with the implementation and consummation of the Plan." Plan, Art. IX.J. The Bankruptcy Court also retained "exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code." Plan, Art. XII.A.

The Bankruptcy Court's exclusive jurisdiction includes jurisdiction to "issue and enforce injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation, implementation or enforcement of the Plan, including all settlements (including the Estate Party Settlement), releases, exculpations and injunctions provided for under the Plan." *See* Plan, Art. XII.A.9.

Should the Plaintiff contend that the Confirmation Order and Plan does not enjoin this case from proceeding, the Plaintiff must litigate that dispute in the Bankruptcy Court. (Plan, Art. XII.A.)   Accordingly, Defendants, Corizon Health, Inc., Elizabeth Bradley, Lalitha Trivikram, and Matu Gaye, respectfully request that this Court enter an order staying this action until and unless the Bankruptcy Court issues an Order that permits it to continue.

Respectfully submitted,

**O'CONNOR KIMBALL LLP**

By:   _____
Thomas J. Gregory, Esquire
Two Penn Center Plaza, Suite 1100
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
(215) 564-0400        Facsimile: (215) 564-1973
Email: tgregory@okllp.com
*Counsel for Defendants Corizon Health, Inc.,*
*Elizabeth Bradley, Lalitha Trivikram,*
*and Matu Gaye*

Dated:   7/15/25

# EXHIBIT "A"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

---

In re:

TEHUM CARE SERVICES, INC.,

　　　　　　Debtor.

Chapter 11

Case No. 23-90086 (CML)

---

### YESCARE'S OMNIBUS MOTION TO ENJOIN PLAINTIFFS FROM PROSECUTING CASES AGAINST RELEASED PARTIES

> IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

　　　　CHS TX, Inc. d/b/a YesCare respectfully requests that the Court enter an Order enjoining the non-opt-out Plaintiffs identified in **Exhibit A** of this motion from continuing to prosecute Causes of Action against the Released Party Defendants in those lawsuits as long as the Bankruptcy Plan's Injunctions and Releases do not terminate or become void. The "Released Parties" under the Plan include, among others, Tehum Care Services, Inc. f/k/a/ Corizon Health, Inc., (the "Debtor"), YesCare Cop., CHS TX., Inc., and their current and former employees. As discussed herein, such an Order is necessary and appropriate to facilitate the administration and intended consummation of the Bankruptcy Plan, which releases Causes of Action against the

Released Parties upon the Final Payment Date. *See* 11 U.S.C. § 105(a) (authorizing "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title); 11 U.S.C. § 1123(b)(6) (authorizing "other appropriate provisions not inconsistent with the applicable provisions of this title"); Art. IX.J ("Upon entry of the Confirmation Order, all holders of Claims and Interests shall be precluded and enjoined from taking any actions to interfere with the implementation and consummation of the Plan."); *see also* Fed. R. Bank. Pro. 7016. Such an Order is also consistent with the Court's inherent power as a court of equity to enforce the Bankruptcy Plan and its Injunctions consistent with the Consensual Claimant Release. CHS TX., Inc. has a strong interest in ensuring that the Plan is implemented in a way that is consistent with its intended consummation.

## INTRODUCTION

This Court retained exclusive jurisdiction to determine issues related to the Bankruptcy Plan. That jurisdiction includes post-confirmation jurisdiction over disputes relating to the implementation of execution of the Bankruptcy Plan, including its injunctions and releases.

The bankruptcy proceeding provided any Holder of a personal injury or wrongful death claim against the Debtor with the opportunity to obtain recovery by channeling their claim into a PI/WD Trust provided the claimant filed a timely Proof of Claim and did not opt out of the Consensual Claimant Release. In furtherance of the PI/WD Trust process, the Confirmation Order and Bankruptcy Plan authorized a Channeling Injunction that enjoined Holders from attempting to side-step the PI/WD Trust process by pursuing Channeled Claims as claims that sought recovery from "Released Parties." Upon the Final Payment Date, the Consensual Claimant Release will fully and finally release all Causes of Action against Released Parties, unless a claimant opted out.

2

Plaintiffs identified in Exhibit A ("Plaintiffs") are current or former incarcerated individuals who did not opt out of the Bankruptcy Plan and did not object to or appeal the Confirmation Order. In their respective lawsuits, Plaintiffs asserted pre-petition Causes of Action alleging injuries resulting from conduct by Former Corizon Employees related to and in connection with their employment with the Debtor, including in their capacity as employees providing correctional healthcare on behalf of the Debtor, and which may be attributable to the Debtor and/or reach the *res* of the Debtor under various legal theories, including vicarious liability, *respondeat superior*, *Monell*, and indemnification. Many of the Plaintiffs sued the Debtor directly based on the same conduct.[1] All Plaintiffs directly or impliedly allege that the actionable conduct of the Former Corizon Employee was in their capacity as an employee of the Debtor and in many cases pursuant to an act, omission, or policy of the Debtor. Thus, they all have actually asserted Claims or have possible or potential Claims under the Code.

The Bankruptcy Plan's definition of "Released Parties" expressly includes the Debtor's former employees. The Bankruptcy Plan's Consensual Claimant Release, which is integral to the Plan, releases all claims and Causes of Action "arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor…" Art. IV.B.7; Art. IX.D. Causes of Action against Former Corizon Employees and Released Parties, related to Former Corizon Employee's work on behalf of the Debtor, plainly fall within the Release. Plaintiffs' Causes of Action that are released by the Consensual Claimant Release may also result in potential indemnification claims, successor liability claims, or other claims against other Released Parties, including CHS TX, Inc. and YesCare Corp.

---

[1]    Corizon Health, Inc. remains a named defendant in some of these lawsuits.

The need for an Order enjoining Plaintiffs from prosecuting their lawsuits against Former Corizon Employees and other Released Parties arises because, since the Plan became effective, the Plaintiffs listed in Exhibit A have not agreed to stay their respective lawsuits against Former Corizon Employees and the Released Parties despite the Bankruptcy Plan's Injunctions and the Consensual Claimant Release. Permitting continued prosecution of these lawsuits while the Bankruptcy Plan remains effective, and as long as the Channeling Injunction and Consensual Claimant Release are not void, would directly conflict with the intended consummation of the Plan, including the unconditional release of claims by non-opt out Plaintiffs against Former Corizon Employees, YesCare Corp. and CHS TX, Inc.

The Court should therefore enter an Order confirming that the Plaintiffs in Exhibit A are enjoined from continuing their lawsuits against Former Corizon Employees and other Released Parties as long as the Channeling Injunction and Consensual Claimant Release do not terminate or become void. It would be an epic waste of resources, including judicial resources, and contrary to the intent of the Plan, to allow Plaintiffs to continue to prosecute Causes of Action that the Bankruptcy Plan intends to fully release. Accordingly, Movants respectfully request that the Court enter an Order enjoining the Plaintiffs from further prosecuting their lawsuits as long as the Bankruptcy Plan's Injunctions and Releases are in effect.

## FACTUAL BACKGROUND

By Order dated March 3, 2025, the Court confirmed the *First Modified Joint Chapter 11 Plan of Reorganization of the Tort Claimants' Committee, Official Committee of Unsecured*

*Creditors and Debtor* (the "Bankruptcy Plan"). (Doc. 2014).[2] The Bankruptcy Plan is now effective.

### A.   The Channeling Injunction

Under the Bankruptcy Plan, "Claim" means any claim against the Debtor, as defined in section 101(5) of the Bankruptcy Code. Art. I, ¶ 28. A "Holder" of a Claim means "any Person or Entity holding a Claim...." Art. I, ¶ 105. Plaintiffs who could or did assert injuries arising from conduct attributable to the Debtor are Holders of "PI/WD Claim," which is defined as:

> any unsecured Claim against the Debtor that is attributable to, arises from, is based upon, relates to, or results from an alleged personal injury tort or wrongful death claim within the meaning of 28 U.S.C. § 157(b)(2)(B), including any PI/WD Claim against the Debtor.

Art. I, ¶142. Holders of PI/WD Claims who did not opt out became a "Consenting PI/WD Claimant." Art. I, ¶45. Consenting PI/WD Claimants have their claims "channeled" into a PI/WD Trust and are subject to a Channeling Injunction. Art.I, ¶ 45 (defining Channeling Injunction); Art. IV.D ("All Channeled PI/WD Trust Claims shall be subject to the Channeling Injunction.")).

The Channeling Injunction prohibits Plaintiffs from pursuing recovery outside of a PI/WD Trust against "any Released Party":

> the sole recourse of any Holder of a Channeled PI/WD Trust Claim that is eligible for compensation under the PI/WD Trust Distribution Procedures on account of such Channeled PI/WD Trust Claim shall be to and against the PI/WD Trust pursuant to the PI/WD Trust Documents, and such *Holder shall have no right to assert such Channeled PI/WD Trust Claim or any Claim against the Debtor against any Released Party...*
>
> ...on or after the Effective Date, and subject to the terms of Article IX.I.5, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled Claim *shall be stayed, restrained, and enjoined* from taking any action for the

---

[2] Capitalized terms used herein but not defined have the meanings ascribed to in the Bankruptcy Plan.

> purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery *from any Released Party* with respect to any such Channeled Claim, other than from the Trusts…

Art. IX.1.2. Pursuant to Art. III.F.6(a)(i), "[e]xcept as provided in the Plan, Holders of Channeled PI/WD Claims shall be enjoined from prosecuting any outstanding or filing future Claims against the Released Parties in any forum whatsoever, including any state, federal, or non-U.S. court."

The Bankruptcy Plan defines a "Released Party" to include, amongst others, the Debtor and "each of their respective current and former officers, directors, managers, *employees*, contractors, agents, attorneys, and other professional advisors." Art. I, ¶ 175 (emphasis added).

**B.    The Consensual Claimant Release Applies to Former Corizon Employees**

The Consensual Claimant Release releases the Released Parties from "all claims or Causes of Action, including any Estate Causes of Action, against a Released Party that are released under the Plan and the Confirmation Order." Art. I, ¶ 173.[3]  Pursuant to the Plan's Consensual Claimant Release, "[a]s of the Final Payment Date":

> Consenting Claimants shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each Released Party of and from *any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor*, the Estate, their respective current or former assets and properties, the Chapter 11 Case, the Plan of Divisional Merger, any Claim or Interest that is treated by the Plan, *the business or contractual*

---

[3] The Bankruptcy Plan defines "Causes of Action" to "mean[] any claims, causes of action, interests, damages, remedies, demands, rights, actions (including Avoidance Actions), suits, debts, sums of money, obligations, judgments, liabilities, accounts, defenses, offsets, counterclaims, crossclaims, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Art. I, ¶ 18.

> *arrangements between the Debtor and any Released Party*, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, *or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing…*

The Bankruptcy Plan recognized that these releases were provided in exchange "for good and valuable consideration, the adequacy of which is hereby confirmed, as an integral component of the Plan." Art. IV.B.7; Art. IX.D. The Confirmation Order held that "[t]he release of Claims and Causes of Action by the Consenting Claimants, as set forth in Article IV.B.7 and IX.D of the Plan, constitutes an essential and critical provision of the Plan and forms an integral part of the agreement embodied in the Plan among all parties in interest." Confirmation Order, ¶ 45. The Confirmation Order further held

> 46. The Consensual Claimant Release is: (a) consensual as to the Consenting Claimants, respectively; (b) within this Court's jurisdiction pursuant to 28 U.S.C. § 1334; (c) in exchange for the good and valuable consideration provided by the Released Parties; (d) a good-faith settlement and compromise of the Claims and Causes of Action released by such release; (e) in the best interests of the Debtor and its creditors; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) appropriately tailored under the facts and circumstances of the Chapter 11 Case.

> 47. The Consensual Claimant Release and its protections were necessary inducements to the participation of the Debtor's stakeholders in the negotiations and compromises that led to the Plan and the structure thereof, including the Estate Party Settlement.

Confirmation Order, ¶¶ 46-47. *See also* ¶¶ 91. The Court also held "All applicable parties received due and adequate notice of the Consensual Claimant Release and had the opportunity to opt out of the Consensual Claimant Release." Confirmation Order, ¶ 48.

The Court entered the Confirmation Order as a final order on March 3, 3025, which set the time for appeal. Confirmation Order, ¶ 131. Upon the Effective Date, the Confirmation Order became binding on "All Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan." The Plan contains a broad injunction precluding and enjoining "any actions to interfere with the implementation and consummation of the Plan." Confirmation Order, ¶ 97; ¶ 129.

### C.    Lawsuits Against Former Corizon Employees By Plaintiffs Who Did Not Opt Out Of The Bankruptcy Plan

Plaintiffs in Exhibit A are current or former incarcerated individuals who allegedly received health care from Corizon Health, Inc. pursuant to a Corizon contract with a government and/or government agency before the petition date. Exhibit A identifies the basis for each Plaintiff's knowledge and notice of the bankruptcy proceedings.[4] The Plaintiffs did not opt out of the Bankruptcy Plan's Consensual Claimant Release. The Plaintiffs did not object to or appeal the Confirmation Order.

As their respective Complaints indicate, each Plaintiff claims that they suffered personal injuries as a result of conduct by one or more former Corizon employees (the Former Corizon Employees) who were acting in their capacity as a Corizon employee at the time of the alleged

---

[4] The Court repeatedly approved of the form and manner of notice to claimholders. *See* Doc. 1813, ¶ J; Doc. 1813 at 9, ¶ 18; Doc. 2014 at 6; § G, ¶ 10. In addition to the Plaintiffs' actual knowledge and notice, notice of Deadlines for the Filing of Proofs of Claim was published in The New York Times on May 8, 2023, and in The Wall Street Journal on May 9, 2023, *see* Doc. 610, and Notice of Deadlines for the Filing of Proofs of Claim was also published in the Prison Legal News in the June 2023 issue. *See* Doc. 658.

conduct giving rise to their claim. Most Plaintiffs have either directly asserted claims against Corizon Health, Inc. or directly or impliedly allege that the Former Corizon Employee's actionable conduct was undertaken pursuant to a Corizon directive or policy. The specific legal theories at issue in each are identified in Exhibit A, and generally include negligence, medical malpractice, wrongful death, and § 1983 claims. All claims allege personal injuries as the harm caused by the alleged actionable conduct.

### D.    Plaintiffs Refuse To Stipulate To Stay Their Lawsuits Against Former Corizon Employees and Other Released Parties

After the Plan became effective, counsel for CHS TX, Inc., a "Released Party" under the Bankruptcy Plan, sent letters to each Plaintiff requesting that they agree to a stipulation to be filed in their respective case staying their action against Former Corizon Employees (and, in some instances, against other Released Parties, including CHS) in light of the Plan's Injunctions and the Consensual Claimant Release. Some Plaintiffs agreed. The Plaintiffs identified in Exhibit A did not agree.[5]

## ARGUMENT

### I.    THE COURT HAS JURISDICTION TO ENFORCE THE BANKRUPTCY PLAN CONSISTENT WITH THE CONSENSUAL CLAIMANT RELEASE

Federal district courts may hear "all civil proceedings...related to" bankruptcy cases. 28 U.S.C. § 1334(b). This Court retained "exclusive jurisdiction over all matter arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code..." (Confirmation Order, ¶ 128).

---

[5] Concurrent with filing this motion, Movants are filing motions in all federal and state cases implicated by this motion seeking to stay the respective actions until such time as this Court decides this motion.

A proceeding relates to a bankruptcy case if "the outcome of that proceeding could conceivably have any effect" on the debtor's estate. *Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1022 (5th Cir. 1999) (quotation omitted). "Related-to jurisdiction" thus includes "any litigation" that "could alter the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate." *Collins v. Sidharthan (In re KSRP, Ltd.)*, 809 F.3d 263, 266 (5th Cir. 2015) (cleaned up). Related-to jurisdiction includes "matters pertaining to the implementation or execution of the plan." *Craig's Stores of Tex., Inc. v. Bank of La. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390 (5th Cir. 2001). Indeed, "related-to jurisdiction is clear" when the bankruptcy court seeks to enforce its orders, when there is a dispute over the meaning of the plan, or when it "implicate[s] a specific plan's provision." *In re GenOn Mid-Atl. Dev., LLC*, 42 F.4th 523, 535 (5th Cir. 2022). Related-to jurisdiction therefore includes post-confirmation jurisdiction over suits between non-debtors when the dispute relates to the implementation of execution of the bankruptcy plan. *Id.*; *First Am. Title Ins. Co. v. First Tr. Nat'l Ass'n (In re Biloxi Casino Belle)*, 368 F.3d 491 (5th Cir. 2004).

The Court has jurisdiction here because the Order sought herein specifically seeks to facilitate and enforce the Bankruptcy Plan's injunctions and Consensual Claimant Release. *See In re CJ Holding Co.*, 597 B.R. 597, 611 (S.D. Tex. 2019) (bankruptcy court had "related to" jurisdiction to enforce consensual claimant release against tort claimant).

## II. THE COURT SHOULD ENJOIN PLAINTIFFS FROM PROSECUTING RELEASED CLAIMS UNLESS THE CONSENSUAL CLAIMANT RELEASE BECOMES VOID

Consensual third party releases that discharge claims against non-debtors are appropriate and permitted. *See In re Robertshaw U.S. Holding Corp.*, 662 B.R. 300, 323 (Bankr. S.D. Tex. 2024) (affirming opt out feature for consensual third-party releases, noting "[h]undreds of chapter

11 cases have been confirmed in this District with consensual third-party releases"); *In re Pipeline Health Sys., LLC*, No. 22-90291, 2025 WL 686080, at *4 (Bankr. S.D. Tex. Mar. 3, 2025) ("Opt-out procedures are a proper means to obtain consent to third-party releases in a chapter 11 plan.").[6] Importantly, none of the Plaintiffs objected to or appealed the Confirmation Order. Accordingly, Plaintiffs cannot use their response to this motion as a collateral attack on the Bankruptcy Plan's injunctions, the Consensual Claimant Release, or the notice or opt-out procedures. *See In re CJ Holding Co.*, 597 B.R. 597, 611 (S.D. Tex. 2019); *see also In re Palmaz Sci. Inc.*, 262 F. Supp. 3d 428, 437 (W.D. Tex. 2017); *Republic Supply v. Shoaf*, 815 F.2d 1046 (5th Cir. 1987).

As long as the Bankruptcy Plan remains in effect, and unless the Plan's injunctions and Consensual Claimant Release become void, it would directly conflict and interfere with the intended consummation of the Bankruptcy Plan to allow lawsuits against Former Corizon Employees to proceed when those Causes of Action will be fully released upon Final Payment Date absent a subsequent Settlement Payment clawback. Art. IV.B.13. The Bankruptcy Court has the authority to enjoin the continued prosecution of third-party actions against Former Corizon Employees to facilitate a comprehensive resolution of the Debtor's potential liabilities and to prevent litigation that is inconsistent with the Bankruptcy Plan's Releases. *See* 11 U.S.C. § 105(a)

---

[6] The Supreme Court's opinion in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 144 S.Ct. 2071, 219 L.Ed.2d 721 (2024) does not alter Fifth Circuit law about ***consensual*** releases and injunctions. In *Purdue*, the Court held that the Code "does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of the affected claimants." *Id.* at 227, 144 S. Ct. 2071 (emphasis added). *Compare In re Robertshaw*, 662 B.R. at 22 ("The Plan does not include non-consensual third-party releases like the ones addressed in *Purdue*. It contains consensual ones." So the *Purdue* decision does not apply here) *with Matter of Highland Cap. Mgmt., L.P.*, 132 F.4th 353, 359 (5th Cir. 2025) (disapproving of "a non-consensual release and/or injunction protecting non-debtors").

(authorizing "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title); 11 U.S.C. § 1123(b)(6) (authorizing "other appropriate provisions not inconsistent with the applicable provisions of this title"); Art. IX.J ("Upon entry of the Confirmation Order, all holders of Claims and Interests shall be precluded and enjoined from taking any actions to interfere with the implementation and consummation of the Plan."). A bankruptcy court's power to enforce a consensual release by enjoining third-party actions against non-debtors that would be released is well-recognized as it is in furtherance of the bankruptcy plan. See *In re Think Fin., LLC*, 2019 WL 8272638, at *11 (Bankr. N.D. Tex. Dec. 2, 2019) (confirming injunctions as "necessary to implement the Plan and to preserve and enforce...the Consensual Third Party Releases..."); *In re Dow Corning Corp.*, 280 F.3d 648 (6th Cir. 2002) (third-party injunction authorized by 11239(b)(6) and "broad authority to modify creditor-debtor relationships."); *SEC v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 293 (2d Cir. 1992) ("In bankruptcy cases, a court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the debtor's reorganization plan"); *Matter of Munford, Inc.*, 97 F.3d 449, 456 (11th Cir. 1996) (affirming injunction precluding claims for contribution and indemnity).

## III.    THE CHANNELING INJUNCTION PROHIBITS CONTINUED PROSECUTION OF PLAINTIFFS' CLAIMS AGAINST RELEASED PARTIES

Although the Court has authority to issue a new Order providing the requested injunction, the Court should also confirm that the Channeling Injunction already enjoins Plaintiffs from further prosecuting their claims against Released Parties as along as it has not terminated or the Consensual Claimant Release does not become void. *See* Art. IX.I.

Plaintiffs may argue that the Channeling Injunction does not enjoin their lawsuits against Former Corizon Employees because they have not actually asserted their claims against the

Debtor.  That argument is inconsistent with the Channeling Injunction and the Code.  The Channeling Injunction expressly prohibits Plaintiffs from avoiding the Trust process by prosecuting claims against the Debtor as claims seeking recovery from the Released Parties.  Art. IX.I.2.  There is no question that each Plaintiff is a "Holder" of claims against the Debtor. The Code defines a pre-petition claim as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A).  Congress confirmed that the word "Claim" is to be given the "broadest possible definition" to ensure that "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." H.R.Rep. No. 95–595 (1977) reprinted in 1978 U.S.C.C.A.N. 5963, 6266. *See also In re Nat'l Gypsum Co.,* 139 B.R. 397, 405 (N.D. Tex. 1992) ("courts accordingly have given a broad and expansive reading to the term "claim."). The drafters defined "claim" broadly to ensure that "all those with a potential call on the debtor's assets, provided the call in at least some circumstances could give rise to a suit for payment . . . come before the reorganization court so that those demands can be allowed or disallowed and their priority and dischargeability determined." *In re Caldor, Inc.-NY,* 240 B.R. 180, 191 (Bankr. S.D.N.Y. 1999), *aff'd sub nom. Pearl-Phil GMT (Far E.) Ltd. v. Caldor Corp.,* 266 B.R. 575 (S.D.N.Y. 2001). The term "Claim" is therefore "sufficiently broad to encompass any possible right to payment." *Mazzeo v. U.S. (In re Mazzeo),* 131 F.3d 295, 302 (2d Cir. 1997) (*citing Ohio v. Kovacs,* 469 U.S. 274, (1985).

A Plaintiff alleging an injury resulting from the actions of a Former Corizon Employee that is based on the employee's conduct arising from their employment by the Debtor is invariably a Holder of a "Claim" against the Debtor even if they did not name the Debtor as a party, assert the allegations, or file a Proof of Claim. *See In re Russell,* 193 B.R. 568, 571–72 (Bankr.S.D.Cal.

1996) ("where the claimants had a pre-petition relationship to the debtor and the circumstance which gives rise to their claim, it is within the fair contemplation of the parties that a contingent claim exists at that point in time."); *In re Arrowmill Dev. Corp.,* 211 B.R. 497, 503 (Bankr. D.N.J. 1997) ("A discharge in bankruptcy is an involuntary release by operation of law of creditor claims against an entity (both asserted and unasserted) which is enforced by the court."). *Accord In re Natl Gypsum Co.,* 139 B.R. at 405 ("the creditor need not have a cause of action that is ripe for suit outside of bankruptcy in order for it to have a pre-petition claim for purposes of the Code.").

Claims against Former Corizon Employees are inherently derivative of claims against Corizon because the Corizon employees would not have been in a position to act in relation to a Plaintiff's health care but for their employment by Corizon. To the extent a Plaintiff directly or impliedly alleges that the Former Corizon Employee acted within the scope of their employment, or further to a Corizon policy, the Plaintiff would hold a vicarious liability or *respondeat superior* claim against Corizon, or a *Monell* claim in a §1983 action, or a potential indemnification claim regardless of whether the Plaintiff asserted it. The point of the Channeling Injunction is to prevent recovery "from any Released Party" for Channeled Claims. The Channeling Injunction would hardly have any effect if a Plaintiff could obtain recovery "from any Released Party" for conduct attributable to the Debtor simply by declining to name the Debtor as a party.

A Plaintiff's failure to assert their rights in the Bankruptcy Court is also no out. "Once creditors know about the bankruptcy, then they must take steps to protect their rights." *In re Schepps Food Stores, Inc.,* 152 B.R. 136, 138 (Bankr. S.D. Tex. 1993); *Robbins v. Amoco Prod. Co.,* 952 F.2d 901 (5th Cir. 1992) (reh'g denied 1992) ("When the holder of a large, unsecured claim . . . receives any notice . . . that its debtor has initiated bankruptcy proceedings, it is under

constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril.") (citation omitted); *Otto v. Texas Tamale Co.*, 219 B.R. 732, 740 (Bankr. S.D. Tex. 1998) (The failure to act by an individual who knows about a debtor's bankruptcy "is fatal to his claims"). "[I]t does not offend due process to view actual notice of a debtor's bankruptcy to a prepetition creditor as placing a burden on the creditor to come forward with his claim." *Sequa Corp. v. Christopher*, 28 F.3d 512, 517 (5th Cir. 1994). Releasees cannot avoid a consensual claimant release when they had knowledge of the bankruptcy but failed to assert their rights. *In re Pipeline Health Sys., LLC,* 2025 WL 686080, at *4 (Bankr. S.D. Tex. Mar. 3, 2025) (party with notice of the bankruptcy who did not receive an opt-out form because he did not file a proof of claim was bound by the consensual claimant release). "[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect[.]" *Pioneer Brunswick Assoc. Ltd. Partnership*, 507 US 380, 395 (1993).[7]

The Channeling Injunction also must read consistent with the Consensual Claimant Release, which unquestionably releases Causes of Action against the Released Parties relating to or arising from their connection to the Debtor. It is therefore consistent with the intended consummation of the Bankruptcy Plan to read all the Bankruptcy Plan's injunctions as prohibiting prosecution of all actions that would be released upon the Final Payment Date as long as the Plan's injunctions and Consensual Claimant Release do not terminate or become void.

---

[7] To the extent Plaintiffs did not receive Plan notices *because they did not assert their rights*, it is well-established that publication notice of a Confirmation Hearing and Plan provide adequate due process related to notice of third-party releases. *See In re CiCi's Holdings, Inc.,* 2021 WL 819330, at *10 (Bankr. N.D. Tex. Mar. 3, 2021) (holding third-party releases are consensual when "the Publication Notice referenced the release provisions in the Plan and advised careful review of the release, exculpation, discharge, and injunction provisions in Article VIII of the Plan and emphasized in bold and capitalized typeface that parties' rights may be affected thereby."; *see also In re Paddock Enterprises, LLC,* 2022 WL 1746652, at *45 (Bankr. D. Del. May 31, 2022) (publication notice adequate to provide notice of third-party releases).

## CONCLUSION

For the reasons stated herein, the Court should enter an Order enjoining non-opt-out Plaintiffs identified in Exhibit A to this motion from continuing to prosecute Causes of Action against Former Corizon Employees as long as the Bankruptcy Plan's Injunctions and Releases are in effect.

Respectfully submitted,

By: /s/ Trevor W. Carolan
      Trevor W. Carolan
      State Bar No.: 24128898
      Southern District Federal No. 3794850
      **BOWMAN AND BROOKE LLP**
      5850 Granite Parkway, Suite 900
      Plano, TX 75024
      (972) 616-1700 (Telephone)
      Trevor.carolan@bowmanandbrooke.com

      Adam M. Masin
      *Admitted Pro Hac Vice*
      **BOWMAN AND BROOKE LLP**
      750 Lexington Avenue
      New York, NY 10022
      (646) 844-9252 (Telephone)
      Adam.masin@bowmanandbrooke.com

      *Attorneys for Movants*
      *CHS TX, INC. d/b/a YESCARE*

16

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EILEEN A. McNAMARA, as Administrator of the :
of the ESTATE OF JOHNATHAN GLEAVES, JR. :
               v.             :       NO. 20-CV-4570
CITY OF PHILADELPHIA; CORIZON HEALTH, :
GERALD SLORY, ELIZABETH BRADLEY, :
LALITHA TRIVIKRAM, MATU GAYE, and :
JOHN DOE(S) :

### CERTIFICATE OF SERVICE

    I, Thomas J. Gregory, Esquire, hereby certify that I caused a true and correct copy of the foregoing Motion for Stay of All Proceedings to be electronically filed on this _16th_ day of _July_, 2025, and served via electronic mail upon the following:

Jonathan H. Feinberg, Esquire
Kairys Rudovsky Messing & Feinberg, LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
jfeinberg@krlawphila.com
*Attorney for Plaintiff*

Anne B. Taylor, Esquire
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
anne.taylor@phila.gov

Katelyn Lori Mays
Ahmad Zaffarese LLC
One South Broad, 18th Floor
Philadelphia, PA 19107
215-496-9373
kmays@azlawllc.com
*Attorneys for Defendants, City of Philadelphia and Correction Officer Gerald Slory*

**O'CONNOR KIMBALL LLP**

By: _____
    Thomas J. Gregory, Esquire
    Two Penn Center Plaza, Suite 1100
    1500 John F. Kennedy Boulevard
    Philadelphia, PA 19102
    (215) 564-0400    Facsimile: (215) 564-1973
    Email: tgregory@okllp.com
    *Counsel for Defendants Corizon Health, Inc.,*
    *Elizabeth Bradley, Lalitha Trivikram, and Matu Gaye*