## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EILEEN A. MCNAMARA, as Administrator of the ESTATE OF JONATHAN GLEAVES, JR.,** : : : : | |
| **Plaintiff,** : : | |
| **v.** : : | **No. 2:20-cv-04570-RBS** |
| **CITY OF PHILADELPHIA; CORIZON HEALTH; GERALD SLORY; ELIZABETH BRADLEY; LALITHA TRIVIKRAM; MATU GAYE; JOHN DOE(S),** : : : : : : | |
| **Defendants.** : : : | |

## ORDER

**AND NOW,** this _____ day of June, 2026, upon consideration of Plaintiff's

Motion for Leave to File an Amended Complaint, **IT IS ORDERED** that the Motion is Granted

and the Amended Complaint attached as Exhibit A to the Motion shall be docketed.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **EILEEN A. MCNAMARA, as Administrator of the ESTATE OF JONATHAN GLEAVES, JR.,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| **v.** : | **No. 2:20-cv-04570-RBS** |
| : | |
| **CITY OF PHILADELPHIA; CORIZON HEALTH; GERALD SLORY; ELIZABETH BRADLEY; LALITHA TRIVIKRAM; MATU GAYE; JOHN DOE(S),** : | |
| : | |
| **Defendants.** : | |
| : | |

**PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

Plaintiff, through counsel, respectfully moves the Court for leave to file an Amended Complaint. Plaintiff seeks this leave for the principal purposes of (1) substituting Jonathan E. Gleaves as plaintiff in place of the deceased previous plaintiff, Eileen A. McNamara, (2) adding as defendants seven directors and officers of defendant Corizon Health whose improper conduct in connection with bankruptcy proceedings has deprived plaintiff of his ability to recover from Corizon Health and renders those directors and officers personally liable to plaintiff and (3) ensuring that plaintiff's claims in this action are not brought against any entities who are participating in ongoing bankruptcy proceedings such that the stay of this case can be ended and plaintiff can proceed to trial. For the reasons more fully outlined in the attached Memorandum of

2

Law, plaintiff respectfully requests that the Court grant this Motion and enter an Order directing

the docketing of plaintiff's Amended Complaint.[1]

Respectfully submitted,


/s/ Jonathan H. Feinberg
Jonathan H. Feinberg
KAIRYS, RUDOVSKY, MESSING,
  FEINBERG & LIN LLP
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
(215) 925-4400
jfeinberg@krlawphila.com

*Counsel for Plaintiff*

---

[1] Counsel for defendants City of Philadelphia and Slory confirms that those defendants do not oppose this motion. Counsel for defendants Corizon Health, Bradley, Trivikram, and Gay has moved the Court to withdraw from representation and, therefore, is not able to state a position on this motion.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EILEEN A. MCNAMARA, as Administrator of the ESTATE OF JONATHAN GLEAVES, JR.,** | : : : : | |
| **Plaintiff,** | : : | |
| **v.** | : : | **No. 2:20-cv-04570-RBS** |
| **CITY OF PHILADELPHIA; CORIZON HEALTH; GERALD SLORY; ELIZABETH BRADLEY; LALITHA TRIVIKRAM; MATU GAYE; JOHN DOE(S),** | : : : : : : | |
| **Defendants.** | : : | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR LEAVE TO FILE AN AMENDED COMPLAINT**</u>

**I.    Introduction**

Jonathan Gleaves, Jr., died due to an untreated stroke while detained in the Philadelphia Department of Prisons on September 21, 2018, nearly *eight years* ago. This litigation was initiated in 2020. The initial complaint alleged civil rights claims against the City of Philadelphia and a correctional officersas well as Corizon Health and three of its employees. As of February 2023, the parties had completed discovery. Defendants City of Philadelphia and Slory had filed a summary judgment motion, and the parties were in the midst of briefing that motion. Defendants Corizon Health, Bradley, Trivikram, and Gaye filed no summary judgment motion and thus conceded that plaintiff's claims against them would proceed to trial. On February 16, 2023, however, counsel for Corizon informed the Court of Corizon's bankruptcy proceedings. ECF 41. The Court then stayed the case on April 3, 2023. ECF 47.

The litigation has remained in stayed status for more than three years while the bankruptcy proceedings slowly progressed. Significantly, during those proceedings, it has become clear that certain directors and officers of Corizon Health and related companies have engaged in rampant fraudulent conduct. In particular, they siphoned money from Corizon and moved it into other entities over which they had exclusive control. Further, they entered into a comprehensive agreement to resolve the bankruptcy that purported to compensate aggrieved claimants, like plaintiff in this case, but they then failed to meet their obligations to pay into a fund intended to compensate claimants. As a result of this conduct, plaintiff's ability to recover for the misconduct leading to Jonathan Gleaves, Jr.'s death has been unnecessarily delayed and, potentially, extinguished.

The resolution plan entered by the bankruptcy court overseeing the proceedings, however, provided a remedy for this extraordinary misconduct: in the event of a default, claimants, like plaintiff in this case, are expressly permitted to bring claims against, among others, individual directors and officers of Corizon and its related companies, so long as those claims are brought on or before June 3, 2026. Plaintiff now seeks leave of Court to file an Amended Complaint that brings the claims authorized by the bankruptcy proceedings, and, further, to ensure that plaintiff's claims are now asserted only against persons who are not parties to any bankruptcy proceeding and subject to any stay.[2]

For the reasons outlined below, this Motion should be granted, and the Court should direct that the Amended Complaint appended to this Motion, Ex. A, be docketed.

---

[2] The Amended Complaint also substitutes plaintiff Eileen A. McNamara, who is now deceased. ECF 57 (Suggestion of Death); *see also* ECF 49 at 2 n.1; ECF 52 at 1 n.1; ECF 55. The new plaintiff is Jonathan E. Gleaves, the adult son of the decedent, who was appointed as the administrator of the estate on May 29, 2026.

II.     **Factual and Procedural Background**

A.      **The Death of Jonathan Gleaves, Jr., and the Ensuing Civil Rights Litigation**

1.  **Facts in Support of Plaintiff's Claims[3]**

On the evening of September 19, 2018, Philadelphia police encountered Jonathan Gleaves, Jr. at his sister's home and placed him under arrest based on warrants related to an alleged violation of probation. Gleaves was held in police custody until the next day and was admitted to the Philadelphia Department of Prisons in the late afternoon of September 20. Shortly after that admission, Gleaves had medical encounters with two Corizon employees who documented his extensive history of drug usage. They recorded Gleaves's daily usage of 10 bags of heroin, 100 milligrams of Fentanyl, and four to six tablets of Xanax (a benzodiazepine), with his last usage that day. Based on this history, the Corizon employees determined that Gleaves was at substantial risk for withdrawal. Withdrawal is particularly dangerous early in the process—in the days immediately following admission to PDP—and especially so for users of benzodiazepines like Gleaves. In view of this danger and Gleaves's reported usage, the Corizon employees who saw Gleaves placed him on a withdrawal protocol requiring medical assessments three times per day.

Under Corizon's policies and practices, Gleaves was required to have a medical assessment on the next shift after implementation of the withdrawal protocol, that is, between 11:00 pm on September 20 and 7:00 am on September 21. Defendant Nurse Gaye was the employee who was required to schedule that assessment, but she failed to do so. That failure

---

[3] This factual narrative is derived from plaintiff's summary judgment briefing. ECF 42 at 3-9.

resulted in Gleaves not receiving *any* medical assessment during the critical early hours of his withdrawal symptoms.

Gleaves was assigned to the B1 Pod 3 housing area in the CFCF quarantine unit. He arrived in that unit shortly before 1:00 am on September 21. Defendant Gerald Slory, who had been a PDP correctional officer for more than two years, was assigned to work as the B1 Pod 3 housing officer on the 11:00 pm to 7:00 am shift. Slory placed Gleaves in Cell 1 with a man named Tyrone Thomas.

Slory was fully aware of his responsibilities to protect the health and safety of people assigned to his housing unit, to conduct tours every 30 minutes, and to accurately document those tours. Slory conducted, and documented, four tours between 1:11 am and 3:22 am. Thereafter, and in violation of PDP rules for correctional officers, Slory conducted no tours until shortly before 7:00 am. Slory compounded his violation of PDP rules by falsely reporting in the computerized record system that he had conducted four separate tours during this time frame when he had not, in fact, done so.

During this time, Gleaves was experiencing worsening symptoms related to drug withdrawal; as reported by his cellmate, Tyrone Thomas, Gleaves appeared to be "dope sick" in that he was repeatedly defecating in the cell toilet to the point that he needed to use a rag to clean his buttocks. Thomas believed that Gleaves needed urgent medical assistance and at approximately 5:00 am pressed the call button in his cell. He also yelled for assistance. Slory, however, did not respond to the call button. Nor did Slory respond to Thomas's yelled requests for assistance. According to Slory, there never was a reason to respond because, as he claimed in his deposition, no one pressed the call button or asked that Gleaves be removed from his cell to receive medical attention.

4

At 6:56 am, as his shift was ending, Slory conducted a tour of the housing area. As he walked by Cell 1, he shone his flashlight in the cell and observed Gleaves. According to Slory, Gleaves was alive and well and sleeping comfortably.  That, however, was not true. At 7:00 am, Slory's shift ended, and he was replaced in the B1 Pod 3 area by Officer Terrelle Jones who was joined shortly thereafter by her partner Officer Charlene Wilson. At 7:10 am, Jones began the first tour of her shift. She went to Cell 1 and immediately observed that Gleaves was lying on the top bunk fully naked. Concerned that this was a sign of a serious problem, she kicked the cell door, trying to get Gleaves's attention. Gleaves did not respond.

Moments after kicking the door, Jones' concern was heightened when she noticed that Gleaves was foaming at the mouth; as described by Officer Wilson, who joined Jones at the Cell 1 door shortly after Jones' initial observations, the foaming was obvious as there were large quantities running down both sides of Gleaves's face. Jones and Wilson were then joined by a third officer, Christopher Jones. All the officers observed Gleaves's need for emergency medical attention as, in addition to the foaming at the mouth, Gleaves was breathing heavily and gasping for air, was unable to speak, and his eyes were unfocused and moving in different directions.

In addition to making these observations, the officers learned about Gleaves's medical symptoms from his cellmate, Tyrone Thomas, who, from the moment Terrelle Jones kicked the door, vigorously complained to her about what had happened during defendant Slory's shift. Thomas was, as Jones observed, "agitated" when making his complaints, so much so that Jones was concerned he would attack her, which caused her to delay opening the cell door until she was joined by her partner, Officer Wilson. Wilson echoed those observations, describing Thomas as "hyperactive" when describing the events of the early morning hours. While he was in this agitated and hyperactive state, Thomas told Jones that Gleaves had been very sick, that he had

5

tried to summon help for Gleaves by banging on the door all night, and that he pressed the call button in his cell. Despite these efforts, Thomas reported, Slory never responded.

Slory, in addition to denying that he ever heard anyone seeking attention for Gleaves or pressing the call button, claimed that when he conducted his 6:56 am tour, Gleaves was neither naked nor foaming at the mouth. According to Slory, those circumstances could only have developed in the 14 minutes between his 6:56 am tour and Jones' immediate observation upon arriving at Gleaves's cell door. Jones contradicted this assertion, stating that, based on what she saw, there was no way in which Slory could have determined that Gleaves was healthy and safe.

After their observations of Gleaves, Officers Terrelle Jones and Wilson immediately called for medical attention. Gleaves was removed from his cell and taken to the CFCF medical unit, and then transported to Nazareth Hospital. After doctors at Nazareth determined that Gleaves needed more intensive care, he was transported to Hahnemann University Hospital. Gleaves was pronounced dead that afternoon at 1:05 pm.

According to plaintiff's medical expert in the field of neurology, Dr. Joseph Caleb McCall, the precipitating cause of Gleaves's death was a stroke that began in the overnight hours, with the stroke likely due to worsening withdrawal symptoms that led to a change in heart rhythms and blood flow. As Dr. McCall explained, Gleaves's stroke was of the type that could have been treated with earlier intervention. Had medical intervention been provided when Gleaves's cellmate was seeking assistance from Slory, Gleaves would have had a significantly increased chance of surviving the stroke.

### 2. Procedural History Prior to the Bankruptcy Stay

This case was initiated in 2020. As of February 2023, the parties had completed discovery. Defendants City of Philadelphia and Slory had filed a summary judgment motion, and

the parties were in the midst of briefing that motion. ECF 38, 39, 42, 43. Defendants Corizon Health, Bradley, Trivikram, and Gaye filed no summary judgment motion and thus conceded that plaintiff's claims against them would proceed to trial.

On February 16, 2023, counsel for defendants Corizon Health, Bradley, Trivikram, and Gaye filed a Suggestion of Bankruptcy notifying the Court that Corizon's successor entity, Tehum, had initiated bankruptcy proceedings in the U.S. Bankruptcy Court for the Southern District of Texas. ECF 41. On March 27, 2023, counsel for plaintiff and defendants City of Philadelphia and Slory filed a joint status report asking the Court to allow those parties to proceed with the litigation against all defendants but Corizon Health. ECF 46. On April 3, 2023, however, the Court declined to allow the parties to proceed with litigation of those claims and placed the entire case in stayed status. ECF 47. This litigation has remained in that stayed status for more than three years.[4] No further litigation proceedings have occurred during the stay.[5]

**B.      The Corizon Bankruptcy Proceedings and the Misconduct of Directors and Officers**

The bankruptcy proceedings, *In re: Tehum Care Services, Inc.*, No. 23-90086 (Bankr. S.D. Tex.), have been in litigation for more than three years. As has recently come to light, those proceedings have been polluted by significant fraudulent and improper conduct by individual director and officers of Corizon and related companies.

The origin of the fraudulent conduct dates to the months leading up to May 2022, when Corizon Health, Inc. undertook a significant corporate restructuring designed to insulate its

---

[4] During the stay, plaintiff Eileen A. McNamara died. As noted above, the Amended Complaint substitutes a new plaintiff for this reason.

[5] Counsel for Wahabu and Corizon filed a motion to withdraw from representation on April 24, 2026. ECF 126. The Court has scheduled a hearing on that motion for June 10, 2026. ECF 127.

profitable operations from massive liabilities. Corizon re-incorporated in Texas and executed a divisive merger under Texas state law. As a result of this divisive merger, a new entity called YesCare Corp. received all of Corizon's active contracts, representing approximately $200 million in annual government payments, operational infrastructure, management personnel, and ongoing business operations. Tehum Care Services, Inc. ("Tehum") was created as a shell entity and assigned approximately $1.2 billion in liabilities. Many of those liabilities were from pending litigation concerning improper medical care provided by Corizon Health and its employees and agents at detention centers, jails, and prisons throughout the United States. This case was included as a liability assigned to Tehum. In light of those liabilities, Tehum was the entity that filed the Chapter 11 bankruptcy petition referenced above.

Throughout the bankruptcy proceedings, counsel for the trust set up to represent the interests of tort claimants, like plaintiff, discovered that a variety of directors and officers involved with Corizon and its related entities had engaged in significant misconduct. Those directors and officers include Yitzchak Lefkowitz, also known as Isaac Lefkowitz; Sara Ann Tirschwell; Ayodeji Olawale Ladele; Beverly Michelle Rice; Jeffrey Scott King; Jennifer Lynne Finger; and Frank Jeffrey Sholey (collectively "directors and officers"). The group, led principally by Lefkowitz, siphoned money—approximately $30 million—from Corizon and into entities over which the directors and officers had exclusive or near-exclusive control.

The transfer of these funds, among multiple other transactions, directly led to a failure on the part of parties to the Tehum bankruptcy proceedings to comply with obligations under a final Chapter 11 Plan of Reorganization ("Plan"). That Plan was entered by the Bankruptcy Court on March 3, 2025. *In re: Tehum Care Services*, ECF 2014. In relevant part, the Plan provided for payments totaling $50 million to be used to resolve the claims of, among others, tort claimants

like plaintiff in this matter. The Plan also implemented a "Channeling Injunction" that prohibited tort claimants from pursuing litigation against Tehum, its successors, or any individual directors and officers. The Plan specifically identified a list of "Released Parties" who could not be sued in connection with any claim brought by tort claimants, and the Released Parties identified in the Plan included each of the above referenced directors and officers. Counsel involved in the bankruptcy proceedings for Tehum insisted that each of the directors and officers be included among the Released Parties, thereby acknowledging that, but for the protections offered in bankruptcy proceedings, these directors and officers were potentially personally responsible for Tehum's liabilities.

The Plan expressly conditioned the enforcement of the Channeling Injunction on the compliance of the Released Parties with the payment terms of the Plan. Thus, the Plan provided that if there was a default on obligations to pay the required $50 million to satisfy personal injury and wrongful death claims, the Injunction would be dissolved and tort claimants, like plaintiff in this case, would have 90 days to bring causes of action against the Released Parties.

In late 2025, the Released Parties failed to make a payment required under the Plan. After the Released Parties were offered an opportunity to cure the failure, in February 2026, they failed to make another payment, and these payment failures constituted a default under the plan. On March 4, 2026, the trustees charged with administering payments to personal injury and tort claimants, like plaintiff in this case, filed in the bankruptcy proceedings a Notice of Failure to Cure Settlement Payment Default. *In re: Tehum Care Services, Inc.*, No. 23-90086, ECF 2617 (Bk. S.D. Tx.).[6] The Notice provided the following:

---

[6] A hard copy of the Notice was served on counsel for plaintiff and is appended to this motion as Exhibit B.

- As a result of the default, all injunctions contemplated under the Plan that prevented claimants from litigating tort causes of action are terminated and void;

- All protections provided to the Released Parties are terminated;

- All claimants whose claims were addressed in the Plan are permitted to bring causes of action against the Released Parties; and

- All statutes of limitations that would apply to claims against the Released Parties are tolled for a period of 90 days from the date on which the Notice of Default was filed, that is, until June 3, 2026.

It is these developments that have led plaintiff to seek leave to file an Amended Complaint. That pleading adds as defendants the seven directors and officers referenced above and asserts three claims against them: (1) *respondeat superior* liability for the negligence of defendants Bradley, Trivikram, and Gaye; (2) fraud; and (3) liability under the alter ego and piercing of the corporate veil doctrines. Significantly, these claims against these defendants do not implicate any claims or entities currently in bankruptcy proceedings, and, as such, they are not subject to any stay related to such proceedings. Thus, upon the docketing of the Amended Complaint, plaintiff will request a short period of discovery to develop his claims against the director and officer defendants and then will request an opportunity to proceed to trial.

## III.   Argument

The Federal Rules of Civil Procedure endorse a flexible standard for the amendment of pleadings. Thus, under Fed. R. Civ. P. 15(a)(2), "[t]he court should freely give leave when justice so requires." *See Arthur v. Maersk, Inc.*, 434 F.3d 196, 202 (3d Cir. 2006) ("Federal Rule of Civil Procedure 15 embodies a liberal approach to pleading."). A request to amend "must generally be granted unless equitable considerations render it otherwise unjust"; such

considerations include "undue delay, bad faith, and futility."  *Id.* at 204 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Lorenz v. CSX Corp.,* 1 F.3d 1406, 1414 (3d Cir. 1993)).

There are no equitable considerations present in this case that would weigh against granting leave to amend the Complaint. As to the first two factors, plaintiff has acted in good faith and without delay. The amendments to plaintiff's prior pleading are based on facts that only occurred during the recent bankruptcy proceedings, and plaintiff has only become aware of those facts based on recent pleadings filed in those bankruptcy proceedings.[7] Indeed, even if plaintiff could have brought his claims earlier (he could not), he would have been *prohibited* from doing so by the injunction that was made a part of the Plan. The Plan gave plaintiff a 90-day window to bring the claims that are asserted in the Amended Complaint, and plaintiff is seeking leave to amend before the June 3, 2026, due date imposed by the Plan.

As to the third possible equitable consideration, no defendant may not credibly argue that the proposed amendment is futile. The Amended Complaint provides detailed factual pleading outlining the fraudulent and otherwise improper conduct of the director and officer defendants, and that conduct supports the claims that plaintiff has asserted against those defendants.[8] At a minimum, plaintiff has proffered a sufficient factual basis to support proceeding with discovery to develop further factual information in support of plaintiff's claims.

---

[7] Much of the factual basis for plaintiff's Second Amended Complaint was outlined in an adversary complaint filed on behalf of the bankruptcy trustees five weeks ago. *In re: Tehum Care Services, Inc.*, No. 23-90086, ECF 2653 (Bk. S.D. Tex. April 27, 2026). Before the filing of that document, plaintiff did not have access to those facts.

[8] The factual basis and legal claims are similar in many respects to the claims asserted against the director and officer defendants in the recent complaint filed in the bankruptcy proceedings. *See supra* note 7.

11

With no viable equitable considerations justifying denial of plaintiff's request to amend, and given the liberal standards of Rule 15(a), plaintiff has provided a sufficient basis to support amendment.

## IV.    Conclusion

For the foregoing reasons, the Court should grant this Motion and direct the docketing of plaintiff's Amended Complaint

Respectfully submitted,


/s/ Jonathan H. Feinberg
Jonathan H. Feinberg
KAIRYS, RUDOVSKY, MESSING,
  FEINBERG & LIN LLP
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
(215) 925-4400
jfeinberg@krlawphila.com

*Counsel for Plaintiff*

12