IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN E. GLEAVES, as Administrator of the ESTATE OF JONATHAN GLEAVES, JR., | : : : : | CIVIL ACTION |
| Plaintiff, | : : | No. 2:20-cv-04570-RBS |
| v. | : : | JURY TRIAL DEMANDED |
| CITY OF PHILADELPHIA; TEHUM CARE SERVICES, INC. (formerly known as CORIZON HEALTH); GERALD SLORY; ELIZABETH BRADLEY; LALITHA TRIVIKRAM; MATU GAYE; YITZCHAK LEFKOWITZ a/k/a ISAAC LEFKOWITZ; SARA ANN TIRSCHWELL; AYODEJI OLAWALE LADELE; BEVERLY MICHELLE RICE; JEFFREY SCOTT KING; JENNIFER LYNNE FINGER; FRANK JEFFREY SHOLEY; and JOHN DOE(S), | : : : : : : : : : : : : : : : : | |
| Defendants. | : : | |

**AMENDED COMPLAINT**

**I.  PRELIMINARY STATEMENT**

1.      This is a civil rights survival and wrongful death action brought under 42 U.S.C. § 1983 and raising supplemental state-law claims concerning the defendants' deliberate indifference and negligence in failing to ensure necessary emergency treatment for 33-year-old Jonathan Gleaves, Jr., while he was suffering the medical consequences of drug intoxication.  As a result of the defendants' failure to ensure appropriate protective measures, Mr. Gleaves died less than 24 hours after he was admitted to the Philadelphia Department of Prisons.  Plaintiff Jonathan E. Gleaves now seeks on behalf of Mr. Gleaves's estate and heirs damages for the

substantial pain and suffering, financial losses, and loss of life caused by the defendants' conduct.

2.      Plaintiff additionally brings claims against a number of directors and officers of the company formerly known as Corizon Health and various related companies based on these directors' and officers' participation in, among other things, the fraudulent restructuring of Corizon Health's successor entities for the purpose of avoiding financial accountability in wrongful death and personal injury cases like this action.

## II.  JURISDICTION

3.      This Court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and 1367(a).

## III.  PARTIES

4.      Jonathan Gleaves, Jr. ("Mr. Gleaves"), who was at all times relevant to this Complaint a resident of Philadelphia, Pennsylvania, died on September 21, 2018.  At the time of his death, he was 33 years old.

5.      Plaintiff Jonathan E. Gleaves, (hereinafter, "plaintiff") is the adult son of Mr. Gleaves.  On May 29, 2026, plaintiff was appointed as the Administrator of the Estate of Jonathan Gleaves, Jr., by the Office of the Register of Wills of Philadelphia County.  Plaintiff brings this action in his capacity as Administrator of the Estate and for the benefit of Mr. Gleaves's heirs.

6.      Defendant City of Philadelphia is a municipal government entity in the Commonwealth of Pennsylvania, which manages and oversees the Philadelphia Department of Prisons.

2

7. Defendant Tehum Care Services, Inc. ("Tehum"), is the successor entity to the company formerly known as Corizon Health, with a principal place of business in Texas. Tehum, as the successor entity, was, at all times relevant to this Complaint, the holder of a contract to provide medical services at the Philadelphia Police Department's Police Detention Unit in the Philadelphia Police Administration Building. Plaintiff identifies Tehum as a nominal defendant that was operated through the individual director and officer defendants identified below. Tehum has no assets, and plaintiff seeks no recovery from Tehum. References to Corizon Health throughout this Amended Complaint are intended to refer to Tehum.

8. At all times relevant to this Complaint, defendant Gerald Slory was employed by the Philadelphia Department of Prisons as a Correctional Officer assigned to the Curran-Fromhold Correctional Facility.

9. At all times relevant to this Complaint, defendant Elizabeth Bradley was employed as a physician by defendant Corizon Health and assigned to provide medical services at the Curran-Fromhold Correctional Facility.

10. At all times relevant to this Complaint, defendant Lalitha Trivikram was employed as a physician by defendant Corizon Health and assigned to provide medical services at the Curran-Fromhold Correctional Facility.

11. At all times relevant to this Complaint, defendant Matu Gaye was employed as a registered nurse by defendant Corizon Health and assigned to provide medical services at the Curran-Fromhold Correctional Facility.

12. At all times relevant to this Complaint, defendants John Doe(s) were employed by defendant City of Philadelphia and/or defendant Corizon Health and are, where appropriate, identified by their employer ("Corizon Doe(s)" or "City Doe(s)"). Plaintiff does not currently

know the identity of these defendants but will seek leave to amend this Complaint to properly name the defendants after the completion of preliminary discovery.

13.    Defendant Yitzchak Lefkowitz a/k/a Isaac Lefkowitz is, in relevant part, the sole director of Tehum and a former director of Corizon. He has regularly conducted business in Philadelphia through his companies' provision of medical services to incarcerated people in the Philadelphia Department of Prisons.

14.    Defendant Sara Ann Tirschwell is, in relevant part, a former Chief Executive Officer of Corizon and a former Chief Executive Officer of one of Corizon's successor entities. She has regularly conducted business in Philadelphia through her companies' provision of medical services to incarcerated people in the Philadelphia Department of Prisons.

15.    Defendant Ayodeji Olawale Ladele is, in relevant part, a former Executive Vice President and Chief Medical Officer for Corizon and one of Corizon's successor entities. He has regularly conducted business in Philadelphia through his companies' provision of medical services to incarcerated people in the Philadelphia Department of Prisons.

16.    Defendant Beverly Michelle Rice is, in relevant part, a former Corporate Controller for Corizon and a current Corporate Controller for one of Corizon's successor entities. She has regularly conducted business in Philadelphia through her companies' provision of medical services to incarcerated people in the Philadelphia Department of Prisons.

17.    Defendant Jeffrey Scott King is, in relevant part, a former Chief Legal Officer for Corizon and a current Executive Vice President and Chief Legal Officer for one of Corizon's successor entities. He has regularly conducted business in Philadelphia through his companies' provision of medical services to incarcerated people in the Philadelphia Department of Prisons.

4

18.     Defendant Jennifer Lynne Finger is, in relevant part, a former Assistant General Counsel for Corizon and a current Assistant General Counsel for one of Corizon's successor entities. She has regularly conducted business in Philadelphia through her companies' provision of medical services to incarcerated people in the Philadelphia Department of Prisons.

19.     Defendant Frank Jeffrey Sholey is, in relevant part, a former Chief Financial Officer for Corizon and a current Chief Executive Officer for one of Corizon's successor entities. He has regularly conducted business in Philadelphia through his companies' provision of medical services to incarcerated people in the Philadelphia Department of Prisons.

20.     At all times relevant to this Complaint, all defendants acted under color of state law.

21.     At all times relevant to this Complaint, defendants Bradley, Trivikram, Gaye, and Corizon Doe(s) were acting as agents, servants, and/or employees of defendant Corizon Health, were acting within the scope and course of their employment, and were acting under the direct control and supervision of defendant Corizon Health. Corizon Health, its successor entities, and the directors and officers named in this Amended Complaint are therefore liable for the negligent conduct of defendants Bradley, Trivikram, and Gaye on a *respondeat superior* theory of liability

22.     At all times relevant to this Complaint, all defendants acted in concert and conspiracy and were jointly and severally responsible for the harms caused to Mr. Gleaves.

## IV.  FACTUAL ALLEGATIONS

### A.  Mr. Gleaves's Death is Caused by Defendants' Misconduct

23.     In the evening of September 19, 2018, Jonathan Gleaves, Jr., was taken into custody by Philadelphia police on a warrant related to minor drug possession charges.

5

24.     In the afternoon of September 20, 2018, Mr. Gleaves was admitted to Curran-Fromhold Correctional Facility ("CFCF"), the main intake facility for men in the Philadelphia Department of Prisons.

25.     On arrival, Mr. Gleaves informed correctional and medical staff that he had struggled with substance abuse and that he had been a frequent user of heroin, fentanyl, and Xanax.

26.     As of September 2018, the City of Philadelphia and Corizon Health were aware that persons incarcerated in the Philadelphia Department of Prisons frequently experienced substance abuse problems, and, further, that these problems could result in serious medical consequences, including death.

27.     Accordingly, as of September 2018, the City of Philadelphia and Corizon Health were aware that persons with substance abuse issues who were admitted to Philadelphia Department of Prisons facilities required close and frequent monitoring in order to ensure timely intervention in the event of a serious and dangerous medical condition.

28.     In the evening of September 20, 2018, Mr. Gleaves had a medical intake appointment with defendants Elizabeth Bradley, MD, and Matu Gaye, RN.

29.     In that appointment, Mr. Gleaves gave Bradley and Gaye a specific account of his substance abuse history, including his regular daily usage of heroin, Xanax, and fentanyl.

30.     As a result, Bradley and Gaye were aware that Mr. Gleaves was at risk of serious medical consequences or death and that appropriate monitoring was required.

31.     Despite that knowledge, Bradley and Gaye failed to order any monitoring of Mr. Gleaves's medical condition.

32.     To the extent Bradley and Gaye's directives did require medical monitoring of Mr. Gleaves, defendant John Doe(s) were responsible for the failure to carry out such monitoring.

33.     After his medical appointment, in the early morning hours of September 21, 2018, Mr. Gleaves was assigned to a cell in the quarantine unit of CFCF.

34.     The quarantine unit is a location specifically designed for the housing of people newly admitted to the facility.

35.     The City of Philadelphia was aware that persons housed in the quarantine unit have an elevated risk of experiencing serious medical conditions and that this risk is especially pronounced for those persons with substance abuse issues who have experienced a sudden stoppage of regular usage due to arrest and imprisonment.

36.     Accordingly, the City of Philadelphia was aware that it was necessary to ensure close monitoring of persons housed in the quarantine unit.

37.     Despite that knowledge, in September 2018, the City of Philadelphia failed to provide for such monitoring in at least two different respects.

38.     First, the City failed to ensure that cells in the quarantine unit had working alarm buttons—that is, buttons persons housed in a cell could press to alert officers to an emergency situation.

39.     To the extent cells did have working alarm buttons, the City failed to ensure that correctional officers were advised of their duty to respond to alerts from the pressing of such buttons.

40.     Second, the City failed to ensure that its officers conducted regular tours of the housing unit to assess the health and safety of persons housed in that unit.

41.     The cell that Mr. Gleaves was placed in on September 21, 2018, was occupied by another person, T.T.

42.     Within a few hours, T.T. noticed that Mr. Gleaves appeared to be suffering from serious medical consequences related to his substance abuse issues, including vomiting and diarrhea.  T.T. observed that Mr. Gleaves appeared to be experiencing severe pain and discomfort, as he was constantly moaning.

43.     Eventually, T.T. observed that Mr. Gleaves grew quiet and was making no sounds whatsoever.

44.     After observing Mr. Gleaves, T.T. grew concerned about his medical condition.

45.     T.T. pressed the alarm button in the cell.

46.     During the early morning hours of September 21, 2018, defendants Slory and City Doe(s) were assigned to monitor persons housed in the quarantine unit at CFCF.

47.     When T.T. pressed the alarm button in the cell he shared with Mr. Gleaves, defendants Slory and City Doe(s) were not alerted to the emergency situation because they had turned off the alarm system.

48.     Alternatively, defendants Slory and City Doe(s) failed to respond to the alarm initiated by T.T. because they followed a practice of ignoring requests for emergency assistance.

49.     In addition to failing to respond to the alarm, defendants Slory and City Doe(s) failed to adhere to their responsibility to conduct regular tours of the quarantine housing unit.

50.     As a result, Mr. Gleaves was left in his cell suffering from a medical emergency without necessary medical intervention.

51.      At approximately 7:00 a.m. on September 21, 2018, defendants Slory and City Doe(s) completed their shift.  A new shift of officers entered the unit.

52. Within a few minutes of the start of the 7:00 a.m. shift, an officer walked by Mr. Gleaves's cell and noticed that he was lying naked on his bunk and not moving.

53. When the officer entered the cell, she saw that Mr. Gleaves had a white foamy substance surrounding his mouth.

54. Mr. Gleaves was awake and could respond to stimuli, but he could not speak.

55. It was obvious that Mr. Gleaves was suffering from a serious medical condition and that he needed emergency medical treatment.

56. The officers summoned medical attention for Mr. Gleaves.

57. The medical response to the medical emergency was directed by defendant Lalitha Trivikram, MD and Corizon Doe(s).

58. While understanding the severity of the situation, defendants Trivikram and Corizon Doe(s) failed to ensure immediate medical intervention for Mr. Gleaves.

59. The delay in care for Mr. Gleaves increased the risk to his health and safety and increased the severity of his medical situation.

60. Mr. Gleaves was later that morning transferred to Nazareth Hospital and then to Hahnemann University Hospital.

61. On arrival, diagnostic testing showed that Mr. Gleaves had suffered an apparent stroke-like condition which, given his substance abuse, was likely caused by his ingestion of drugs.

62. Despite medical intervention, Mr. Gleaves's condition worsened substantially.

63. Shortly after 1:00 pm Mr. Gleaves's heart stopped and he could not be revived. He was pronounced dead at 1:05 pm.

64.     An autopsy was conducted and concluded that Mr. Gleaves' death was caused by "drug intoxication."

65.     Mr. Gleaves's death could and would have been prevented had there been earlier intervention to address his serious medical consequences after he was placed in his cell in the early morning hours of September 21, 2018.

66.     The delay in intervention for Mr. Gleaves was the direct and proximate result of the actions and inactions, with deliberate indifference, of defendants Slory, Bradley, Trivikram, Gaye, and Doe(s).

67.     The failures of these defendants to act in such a way as to ensure appropriate intervention for Mr. Gleaves were due to the failure of defendants City of Philadelphia and Corizon Health, with deliberate indifference, to establish appropriate policies, practices, procedures, and training regarding the protection of persons admitted to the Philadelphia Department of Prisons facilities with substance abuse issues.

68.     At all relevant times, all defendants were aware of Mr. Gleaves's serious medical needs and failed, with deliberate indifference, to ensure that Mr. Gleaves received needed evaluation and treatment.

69.     In the alternative, defendants made an intentional decision with regard to Mr. Gleaves's medical care which placed Mr. Gleaves at substantial risk of suffering serious harm. These defendants did not take reasonable available measures to abate that risk, even though a reasonable correctional officer and/or nurse in the circumstances would have appreciated the high degree of risk involved, thereby making the consequences of the defendants' conduct obvious.

10

70.    At all times relevant to this Complaint, the conduct of all defendants was in willful, reckless, and callous disregard of Mr. Gleaves's rights under federal and state law.

71.    As a direct and proximate result of the conduct of all defendants, Mr. Gleaves experienced enormous physical and emotional pain and suffering.

72.    As a direct and proximate result of the conduct of all defendants, Mr. Gleaves was caused to lose the enjoyment of his life and was also caused to suffer complete loss of earnings and earning capacity.

### B.  The Directors' and Officers' Misconduct in Connection with the Corizon Bankruptcy Proceedings

73.    This case has been in litigation since 2020. As of February 2023, the parties had completed discovery. Defendants City of Philadelphia and Slory had filed a summary judgment motion, and the parties were in the midst of briefing that motion. Defendants Corizon Health, Bradley, Trivikram, and Gaye filed no summary judgment motion and thus conceded that plaintiff's claims against them would proceed to trial.

74.    On February 16, 2023, counsel for defendants Corizon Health, Bradley, Trivikram, and Gaye filed a Suggestion of Bankruptcy notifying the Court that Corizon's successor entity, Tehum, had initiated bankruptcy proceedings in the U.S. Bankruptcy Court for the Southern District of Texas.

75.    On March 27, 2023, counsel for plaintiff and defendants City of Philadelphia and Slory filed a joint status report asking the Court to allow those parties to proceed with the litigation against all defendants but Corizon Health.

76.    On April 3, 2023, the Court declined to allow the parties to proceed with litigation of those claims and placed the entire case in stayed status, and this litigation has remained in that stayed status for more than three years.

77.     Since that time, the individual director and officers named as defendants here engaged in significant fraudulent conduct in connection with the bankruptcy proceedings, *In re: Tehum Care Services, Inc.*, No. 23-90086 (Bankr. S.D. Tex.).

78.     The origin of the fraudulent conduct dates to the months leading up to May 2022, when Corizon Health, Inc. undertook a significant corporate restructuring designed to insulate its profitable operations from massive liabilities. Corizon re-incorporated in Texas and executed a divisive merger under Texas state law.

79.     As a result of this divisive merger, a new entity called YesCare Corp. received all of Corizon's active contracts, representing approximately $200 million in annual government payment, operational infrastructure, management personnel, and ongoing business operations.

80.     Tehum was created as a shell entity and assigned approximately $1.2 billion in liabilities. Many of those liabilities were from pending litigation concerning improper medical care provided by Corizon Health and its employees and agents at detention centers, jails, and prisons throughout the United States. This case on behalf of the Estate of Jonathan Gleaves, Jr., was included as a liability assigned to Tehum.

81.     In light of those liabilities, Tehum was the entity that filed the Chapter 11 bankruptcy petition referenced above.

82.     The filing of the bankruptcy was part of a process known as the Texas Two-Step. The restructuring was orchestrated and executed with the deliberate participation of a tightly knit group of insiders who maintained control over both Tehum and YesCare. Those insiders include defendants Lefkowitz, Sholey, Tirschwell, King, Ladele, Rice, and King (collectively "director and officer defendants"). As outlined below, each of these defendants engaged in conduct that rendered them alter egos of the corporate entities on whose behalf they purported to act.

12

83.     Defendant Isaac Lefkowitz served as the decision maker for an entity called Perigrove 1018. That entity had acquired Tehum's ultimate parent, M2 HoldCo, LLC, in December 2021. M2 LoanCo, LLC became the entity that served as Tehum's secured lender. Between December 2021 and November 2022, defendant Lefkowitz arranged for the transfer of $24.5 million from Corizon and ultimately to M2 Loan Co. That entity had only two directors: Isaac Lefkowitz and another person not named in this case. The entity had no employees and maintained no email records on its own server.

84.     Additionally, Lefkowitz was the "Interim CEO" of an entity called Valitas Health, which was at the time Corizon's parent company. In December 2021, Lefkowitz executed a consulting agreement with a company called Geneva Consulting, an entity controlled by Perigrove 1018, and directed others, including defendant Jeffrey Sholey, to pay $5.5 million from Corizon to Geneva Consulting.

85.     Defendant Frank Jeffrey Sholey served as Chief Financial Officer of Corizon Health and seamlessly transitioned to become Chief Executive Officer of YesCare Corp., the entity that took on Corizon's profitable assets, thereby demonstrating direct continuity of management and control between the pre and post restructuring entities. As CFO, Sholey had direct personal involvement in executing the financial transfers to Geneva Consulting at Lefkowitz's direction, had intimate knowledge of the restructuring's financial mechanics, and directly benefited from the scheme by obtaining the CEO position at the then-profitable successor.

86.     Defendant Sara Ann Tirschwell served as Chief Executive Officer of both Corizon Health, Inc. and YesCare Corp. As CEO of both entities, Tirschwell had ultimate executive authority over the operational decisions of both entities during the relevant period.

87.     Defendant Jeffrey Scott King served as Chief Legal Officer at Corizon Health, Inc. and transitioned to the same role at YesCare Corp. as Executive Vice President and Chief Legal Officer. As CLO, King had direct involvement in structuring, reviewing, and approving the legal mechanics of the divisive merger and the Texas Two-Step restructuring.

88.     Defendant Ayodeji Olawale Ladele served as the Executive Vice President and Chief Medical Officer for Corizon and transitioned to the same roles for YesCare Corp. In these positions, Ladele was intimately involved in operational decision making of both entities during the relevant period.

89.     Defendant Beverly Michelle Rice served as the Corporate Controller for Corizon and transitioned to the same roles for YesCare Corp. In these positions, Rice was intimately involved in operational decision making of both entities during the relevant period.

90.     Defendant Jennifer Lynne Finger served as the Assistant General Counsel for Corizon and transitioned to the same role for YesCare Corp. In these positions, Finger was intimately involved in operational decision making of both entities during the relevant period.

91.     In the time period leading up to and following the divisive merger, the above-listed defendants, led by Lefkowitz, used Corizon as an instrumentality. Lefkowitz, in particular, siphoned money away from Corizon and paid that money to entities over which he had exclusive or near-exclusive control. Each of the other defendants aided and abetted Lefkowitz in these efforts, or, at a minimum, recklessly disregarded the substantial improper withdrawals of funds from Corizon.

92.     The transfer of these funds, among multiple other transactions, directly led to a failure on the part of parties to the Tehum bankruptcy proceedings to comply with obligations under a final Chapter 11 Plan of Reorganization ("Plan").

14

93. That Plan was entered by the Bankruptcy Court on March 3, 2025. *In re: Tehum Care Services*, No. 23-90086, ECF 2014 (Bankr. S.D. Tex.).

94. In relevant part, the Plan provided for payments totaling $50 million to be used to resolve the claims of, among others, tort claimants like plaintiff in this matter.

95. The Plan also implemented a "Channeling Injunction" that prohibited tort claimants from pursuing litigation against Tehum, its successors, or any individual directors and officers. The Plan specifically identified a list of "Released Parties" who could not be sued in connection with any claim brought by tort claimants.

96. The Released Parties identified in the Plan included each of the director and officer defendants named in this pleading. *In re: Tehum Care Services*, No. 23-90086, ECF 2014 at ECF p. 76, ¶ 175 (Bankr. S.D. Tex.)

97. During negotiations to develop the Plan, Tehum's counsel and principals insisted that each of the director and officer defendants named in this pleading be included as Released Parties, thus acknowledging that each director and officer defendant was accountable for Tehum's liabilities but for protections offered under bankruptcy law.

98. The Plan expressly conditioned the Channeling Injunction on the compliance of the Released Parties with the payment terms of the Plan. Thus, the Plan provided that if there was a default on obligations to pay the required $50 million to satisfy personal injury and wrongful death claims, the Injunction would be dissolved and tort claimants, like plaintiff in this case, would have 90 days to bring causes of action against the Released Parties.

99. In late 2025, the Released Parties failed to make a payment required under the Plan. After the Released Parties were offered an opportunity to cure the failure, in February 2026, they failed to make another payment.

100. These payment failures constituted a default under the Plan.

101. On March 4, 2026, the trustees charged with administering payments to personal injury and tort claimants, like plaintiff in this case, filed in the bankruptcy proceedings a Notice of Failure to Cure Settlement Payment Default, and a copy of the Notice was served on plaintiff. *In re: Tehum Care Services, Inc.*, No. 23-90086, ECF 2617 (Bankr. S.D. Tx.). The Notice provided the following:

    a. As a result of the default, all injunctions contemplated under the Plan that prevented claimants from litigating tort causes of action are terminated and void;

    b. All protections provided to the Released Parties are terminated;

    c. All claimants whose claims were addressed in the Plan are permitted to bring causes of action against the Released Parties; and

    d. All statutes of limitations that would apply to claims against the Released Parties are tolled for a period of 90 days from the date on which the Notice of Default was filed, that is, until June 3, 2026.

102. Due to these developments in the bankruptcy proceedings, plaintiff now brings causes of action against the director and officer defendants.

103. None of the director and officer defendants is a party to any bankruptcy proceeding, and, as such stays of litigation that would otherwise apply under bankruptcy law do not apply to these defendants, and this litigation may proceed.

104. Plaintiff brings these claims against the director and officer defendants to remedy the substantial injury caused to plaintiff's ability to recover for the liability of defendants Bradley, Trivikram, and Gaye under a *respondeat superior* theory of liability against the entity

16

that employed them. In particular, the failure of the director and officer defendants to comply with their obligations under the Plan that deprived plaintiff of recoveries due under the Plan was caused, at least in part, by the efforts of the director and officer defendants, led by Lefkowitz, to siphon money—at least $30 million—away from Corizon and into entities over which they had exclusive or near-exclusive control.

105.    This conduct renders the director and officer defendants liable to plaintiff on the causes of action set forth below.

## V.  WRONGFUL DEATH AND SURVIVAL ACTIONS

106.    Plaintiff, as Administrator of the Estate of Jonathan Gleaves, Jr., brings this action on behalf of Mr. Gleaves's heirs under the Pennsylvania Wrongful Death Act, 42 Pa. C.S. § 8301.

107.    Mr. Gleaves's heirs under the Wrongful Death Act are:

   a.  Mr. Gleaves's wife, J.M.,

   b.  His 16-year-old son, J.G., who resides with his mother, J.M.,

   c.  His 11-year-old son, J.G., who resides with his mother, J.M., and

   d.  His 5-year-old daughter, J.G., who resides with her mother, J.M.,

108.    Mr. Gleaves did not bring an action against defendants for damages for the injuries causing his death during his lifetime.

109.    Mr. Gleaves's heirs have, by reason of Mr. Gleaves's death, suffered pecuniary loss, and have or will incur expenses for the costs of Mr. Gleaves's funeral, the costs of Mr. Gleaves's headstone, and the costs of administering Mr. Gleaves's estate.

110. Mr. Gleaves's heirs have, by reason of Mr. Gleaves's death, suffered further pecuniary loss including expected contributions and financial support from Mr. Gleaves for food, clothing, shelter, medical care, education, entertainment, recreation and gifts.

111. Plaintiff also brings this action on behalf of the Estate of Jonathan Gleaves, Jr., under the Pennsylvania Survival Statute, 42 Pa. C.S. § 8302, under which all claims Mr. Gleaves would have been able to bring had he survived may be brought by Mr. Gleaves's estate.

112. Mr. Gleaves's estate has, by reason of Mr. Gleaves's death, suffered pecuniary loss, and has or will incur expenses for the costs of Mr. Gleaves's funeral, the costs of Mr. Gleaves's headstone, and the costs of administering Mr. Gleaves's estate.

113. As a direct and proximate result of the conduct of all defendants, Mr. Gleaves experienced extraordinary physical and emotional pain and suffering before his death, and, as a result of his death, suffered complete loss of earnings and earnings capacity.

114. Plaintiff, via this survival action, seeks damages for these harms caused to Mr. Gleaves.

## VI.  CLAIMS FOR RELIEF

### COUNT I
### Plaintiff v. Defendants Slory, Bradley, Trivikram, Gaye, and Doe(s)
### Federal Constitutional Claims

115. Defendants Slory, Bradley, Trivikram, Gaye, and Doe(s) were deliberately indifferent to Mr. Gleaves's serious medical needs and thereby violated Mr. Gleaves's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution and/or Mr. Gleaves's right to due process of law under the Fourteenth Amendment to the United States Constitution.

## COUNT II
### Plaintiff v. Defendants City of Philadelphia and Corizon Health
### Federal Constitutional Claims

116.    The violations of Mr. Gleaves's constitutional rights under the Eighth and/or Fourteenth Amendments to the United States Constitution, plaintiff's damages, and the conduct of the individual defendants were directly and proximately caused by the actions and/or inactions of defendants City of Philadelphia and Corizon Health, which have, with deliberate indifference, failed to establish policies, practices, procedures and training regarding the protection of persons with substance abuse issues admitted to Philadelphia Department of Prisons facilities.

## COUNT III
### Plaintiff v. Defendants Bradley, Trivikram, Gaye, Doe(s), Tehum, Lefkowitz, Tirschwell, Ladele, Rice, King, Finger, and Sholey
### State Law Negligence Claims

117.    Defendants Bradley, Trivikram, Gaye, and Doe(s) had a duty to comply with generally accepted medical standards of care in their medical treatment of Mr. Gleaves.

118.    Defendant Tehum had a duty to establish policies, practices and procedures to ensure that persons in the position of Mr. Gleaves received proper monitoring and emergency treatment

119.    Defendants Bradley, Trivikram, Gaye, Doe(s), and Tehum violated their respective duties of care to Mr. Gleaves.

120.    The defendants' violation of their duty of care to Mr. Gleaves was a direct and proximate cause and a substantial factor in bringing about Mr. Gleaves's damages as outlined above, and, as a result, defendants are liable to plaintiff.

121.    Because defendants Bradley, Trivikram, Gaye, and Doe(s) were acting as agents, servants, and/or employees of defendant Tehum, and because these individual defendants were acting within the scope and course of their employment, and under the direct control and

19

supervision of defendant Tehum, defendants Lefkowitz, Tirschwell, Ladele, Rice, King, Finger, and Sholey are, likewise, liable to plaintiff on the basis of *respondeat superior* liability.

## COUNT IV
### Plaintiff v. Defendants Lefkowitz, Tirschwell, Ladele, Rice, King, Finger, and Sholey
### Fraud

122.   Defendants Lefkowitz, Tirschwell, Ladele, Rice, King, Finger, and Sholey personally participated in, directed, and/or facilitated a fraudulent corporate restructuring designed to strip assets from Corizon Health, Inc., while leaving a shell entity to absorb liabilities owed to tort claimants, like plaintiff.

123.   Additionally, these defendants fraudulently removed substantial funds from Corizon Health and directed them to entities over which they had exclusive, or near-exclusive, control.

124.   Under Pennsylvania law, corporate officers and directors who personally participate in fraudulent activity are individually liable for corporate liabilities.

125.   The conduct of these defendants was willful, wanton, and in reckless disregard for the rights of tort claimants, like plaintiff, and was undertaken with the specific intent to deprive plaintiff of the ability to recover for injuries caused by the tortious conduct of Corizon's agents and employees.

126.   As a direct and proximate result of these defendants' fraudulent conduct, plaintiff has been deprived of the ability to recover against the entity legally responsible for injuries caused to the Estate of Jonathan Gleaves, Jr.

**COUNT V**
**Plaintiff v. Defendants Lefkowitz, Tirschwell, Ladele,**
**Rice, King, Finger, and Sholey**
**Piercing the Corporate Veil and Alter Ego Liability**

127.    Defendants Lefkowitz, Tirschwell, Ladele, Rice, King, Finger, and Sholey directly and indirectly exercised domination and control over Corizon without regard to corporate formalities and/or aided and abetted the exercise of such domination and control.

128.    The actions of these defendants to, among other things, facilitate a fraudulent restructuring of Corizon Health and to siphon funds from Corizon into entities over which they had exclusive or near-exclusive control renders each defendant personally liable to plaintiff under alter ego and veil-piercing theories of liability under Pennsylvania law.

129.    As a direct and proximate result of these defendants' conduct, plaintiff has been deprived of the ability to recover against the entity legally responsible for injuries caused to the Estate of Jonathan Gleaves, Jr.

130.    As such, the personal liability of these defendants may not be shielded by any protections offered by the corporate form.

## VI.  REQUESTED RELIEF

**Wherefore**, plaintiff respectfully requests:

A.      Compensatory damages as to all defendants;

B.      Punitive damages as to defendants Slory, Bradley, Trivikram, Gaye, Doe(s),

Lefkowitz, Tirschwell, Ladele, Rice, King, Finger, and Sholey;

C.      Reasonable attorney's fees and costs;

D.      Such other and further relief as may appear just and appropriate.

Plaintiff hereby demands a jury trial.

/s/ Jonathan H. Feinberg
Jonathan H. Feinberg
I.D. No. 88227
KAIRYS, RUDOVSKY, MESSING,
  FEINBERG & LIN LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA  19106
215-925-4400
215-925-5365 (fax)
jfeinberg@krlawphila.com

*Counsel for Plaintiff*

22